## THE STATE v. TOOKER, Appellant.

**Division Two, May 16, 1905.**

1. **APPELLATE PRACTICE: Motion to Quash Information: Bill of Exceptions.** A motion to quash an information is no part of the record proper, and the overruling of such motion must be properly objected and excepted to and preserved in the bill of exceptions, in order to raise the question of the sufficiency of the information in the appellate court, unless it is fatally defective and fails to charge any offense.

2. **ASSAULT: Self-Defense: Instruction.** An instruction on self-defense, set out in the opinion, held to properly cover the law on this subject.

3. ————: **Instruction: Evidence.** Where all the testimony, including that of defendant, shows that the assault was made outside of defendant's office, and was not made in an effort to eject the prosecuting witness from the office, or in repelling resistance to efforts to eject him, or in the preservation of order in the office, but was made upon the theory of self-defense, an instruction as to defendant's right to eject him is unwarranted and is properly refused.

Appeal from Christian Circuit Court.—*Hon. Asbury Burkhead,* Judge.

AFFIRMED.

*S. E. Bronson* and *G. A. Watson* for appellant.

The evidence abundantly shows that the prosecuting witness was drunk and disorderly and, when drunk, dangerous and quarrelsome; that Tooker, the defendant, was in charge of the station, and bound to protect the public from insult and annoyance. Under this evidence the instruction marked "refused" should have been given, or at least its substance in some form.

*Herbert S. Hadley,* Attorney-General, *Rush C. Lake,* Assistant Attorney-General, and *G. Purd Hays* for the State.

(1) By reason of the failure of the defendant to except to the overruling of the motion to quash the information, on account of the insufficiency of the verification, that question is not now before this court for review. State v. Henderson, 109 Mo. 292; State v. Fraker, 137 Mo. 258; State v. Campbell, 141 Mo. 597; State v. Brown, 181 Mo. 192. (2) The instruction marked "given," and complained of by defendant, is the law, and has been so held by this court for a number of years. State v. Shoultz, 25 Mo. 152.

FOX, J.—The information in this case was filed on January 13, 1904, in the circuit court of Christian county, Missouri, by the prosecuting attorney, charging the defendant, L. M. Tooker, with feloniously assaulting, with intent to kill, one Frank Farris, in Billings, said county and State, upon the 24th day of December, 1903. The information was verified by the prosecuting witness, Frank Farris, and it charged the defendant with striking said Farris with a stove poker.

The defendant was arrested and filed a motion to quash the information, which motion was by the court overruled, and the defendant was arraigned and pleaded not guilty and was placed upon trial.

The information, omitting caption, was as follows:

"G. Purd Hays, prosecuting attorney within and for the county of Christian, in the State of Missouri, informs the court under his official oath and upon his best information and belief that L. M. Tooker, on or about the 24th day of December, 1903, at the said county of Christian, in the State of Missouri, in and upon the body of one Frank Farris, then and there being, feloniously, on purpose and of his malice aforethought, did make an assault, and did then and there felonious-

ly, on purpose and of his malice aforethought, strike, beat and wound him, the said Frank Farris, in and upon the body, with a certain rod of iron, to-wit, a stove poker, which said stove poker was then and there of the weight of four pounds and of the length of three feet, and which said stove poker was then and there a dangerous and deadly weapon, likely to produce death and great bodily harm, which said stove poker the said L. M. Tooker then and there had and held in his hands, with intent then and there him, the said Frank Farris, on purpose and of his malice aforethought, feloniously to kill and murder, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State.

"G. Purd Hays,
"Prosecuting Attorney.

"Frank Farris makes oath and says that the facts stated in the foregoing information are true according to his best knowledge, information and belief.

"Frank Farris.

"Subscribed and sworn to before me this 13th day of January, A. D. 1904.

(L. S.)                                "Jno. F. Aven,
"Circuit Clerk."

The evidence developed at the trial of this case substantially shows the following state of facts:

The night of the difficulty, the 24th day of December, 1903, the defendant was the agent of the St. Louis & San Francisco Railroad Company at Billings in Christian county, Missouri, and in charge of the company's station at that point; on that day the prosecuting witness, Frank Farris, went to Billings to meet his sister who was coming from St. Louis. Farris went to the waiting room of the depot and was standing near the door; the defendant asked him to close the door and failing to get any response from him reached through the ticket window and swung the door on its hinges and it struck Farris; the prosecuting witness then turned

around and slammed the door shut in rather a violent manner with a remark to the defendant, "Now your door is shut." The prosecuting witness testified that after this occurrence the defendant got an iron poker and came after him and that he backed off out to the railroad by the depot and after he got out there the defendant hit him with the iron poker on the head, which rendered him unconscious for about twenty-eight hours. The testimony disclosed by the record shows that the defendant, after the violent slamming of the door, ordered the prosecuting witness to get out of the depot, and that, in obedience to such order, Farris, the prosecuting witness, did leave the depot room and went out onto the platform and it was out there that the assault charged was made upon him. The testimony is somewhat conflicting as to how far outside of the door on the platform Farris was standing, but all of the evidence indicates that he had left the inside of the door and had gone onto the platform at least some distance when he was struck by the defendant with the iron poker. The testimony rather clearly indicates that after the prosecuting witness started to leave the depot room in accordance with the request of the defendant, the defendant followed him out onto the platform with the poker in his hand, and it was there that the assault was made by the defendant upon him. There is some testimony tending to show that Farris was picked up, after he was assaulted, about one hundred or one hundred and fifty yards from the depot, and that he could be traced by the trail of blood made along where he walked. The physicians who attended him stated that they found a wound on the left side of the head, just above the temple bone, and that it was about forty-eight hours from the time they got his wounds dressed and got him off home before he seemed to recognize or talk about anything. The prosecuting witness at the time of the difficulty was somewhat under the influence of intoxicating liquor.

The defendant introduced testimony showing his good reputation as a peaceable, quiet citizen. The defendant testified in his own behalf and gave substantially the following account of the difficulty: "Well, after train No. 4, that is, the east-bound train, passed, I went in and I passed a party there at the waiting-room door, and I went around the end of the partition and went into my office and came back to the ticket window, which is located two and a half or three feet from the corner of this waiting-room, and the door was standing open there and there were two or three people in the waiting-room, and this man that proves to be Frank Farris stood in the door near where the door hinges, and I asked him to step out of the door, and I reached through to shut the door, and I asked him the second time, and he moved slightly to one side and I supposed the door would clear him, and I merely reached through and gave the door a sling. It would not have knocked a baby down if it had struck him; but the door struck him along on the side and he whirled and grabbed the door with both hands and slammed it, and as the previous witness stated it shook the building, and it also shook it so hard that it broke a lamp, and when the panes cracked it knocked the cracked glass down on the platform. The jar was so great I turned around and said to him: 'If you had got out of the door as I asked you to do, that would not have been necessary,' and he said: 'Have you got some kick coming?' I said: 'Yes sir; you get out and go away from here,' and he made some remark and I started out of my office into the waiting-room to see that he did go away. I had other passengers there and I supposed I was put there to look after my company's interest, and I went out to see that he went away; and he stepped out between this door and bay-window, which is not exceeding six feet, possibly less. I stepped there and told him to get away, and he said it was a public place and he had a right there. I said: 'I don't want you around

here.' With that he drew his hand from his pocket and he had something metal in his hand. I supposed it was a gun. I said: 'Put up that gun,' and I told him the second time to put up that gun, and I told him the third time. I said: 'If you don't put up that gun I am going to hit you,' and with that he rolled the instrument and the metal flashed in my eye, and I took no further chances. There is the sum and substance of the story." The defendant while on the stand in answer to the question, "Why did you strike him?" answered: "Because I thought he was either going to use a gun on me or something else; I knew he was fixed for action."

At the close of the evidence the court instructed the jury. It is unnecessary to reproduce all of the instructions given in the case; we will, however, give those about which complaint is made due consideration during the course of the opinion.

The cause was submitted to the jury and they returned a verdict finding the defendant guilty of a felonious assault and assessing his punishment at a fine of one hundred dollars.

Judgment upon the verdict was accordingly entered, from which the defendant in due time prosecuted his appeal to this court, and the record is now before us for consideration.

### OPINION.

The errors complained of upon this appeal are briefly stated by learned counsel for appellant in their assignment of errors as follows:

I. The court erred in refusing to quash the information.

II. The court erred in giving the instruction herein set out marked "Given."

III. The court erred in refusing to give the instruction herein set out marked "Refused."

Upon the first proposition, "that the court erred in refusing to quash the information," it will be sufficient to say that the error complained of is nowhere

properly preserved in the record before us. It has been uniformly ruled by this court that the motion to quash an information or indictment, with the proper objections and exceptions to the ruling of the court upon such motion, must be preserved in the bill of exceptions, and unless this is so done, the sufficiency or insufficiency of the indictment or information cannot be considered by this court, unless it is fatally defective and fails to charge any offense under the law. A motion to quash an information or indictment is no part of the record proper, and can only be made so by properly preserving such motion in the bill of exceptions. The fact that the clerk in this case has copied the motion to quash in the record proper in no way relieves the difficulty; such voluntary copying by the clerk of the motion for new trial, and placing it in the record proper, does not in a legal sense make it a part of the record proper, nor does it preserve it for review by this court.

A record very similar to this one was presented to this court in State v. Fraker, 137 Mo. 258. The question presented in that case is identical with the one in the case at bar, so much so that we feel warranted in fully reproducing what was said by this court in that case upon this question. GANTT, J., speaking for the court, thus briefly treated this proposition. He said: "This is an appeal by the State of Missouri from a judgment of the circuit court of Ray county quashing an indictment against the respondent. The indictment was discussed with much ability by both sides. The case has some very unusual features and has excited much interest, particularly in its legal aspects. The motion to quash the indictment was sustained. The prosecuting attorney filed no bill of exceptions and the motion to quash the indictment was not therefore made a part of the record. That we may not be misunderstood, we state that the clerk has copied the different motions to quash into the transcript certified to this

court, and the record proper recites in the order over-ruling the motion that the prosecuting attorney at the time excepted to the ruling of the court, but this action of the clerk in voluntarily copying these motions into the transcript does not make them a part of the record in a legal sense, nor does the noting of the exception on the record proper preserve it for review by this court. The motion to quash must be preserved in a bill of exceptions or its sufficiency cannot be considered by this court. [State v. Fortune, 10 Mo. 466; State v. Wall, 15 Mo. 208; State v. Gee, 79 Mo. 313; State v. Thruston, 83 Mo. 271; State v. Vincent, 91 Mo. 662; State v. Henderson, 109 Mo. 292.]''

It is insisted by appellant that the instruction given by the court upon its own motion erroneously presented defendant's right of self-defense. It was as follows:

''The law of self-defense is emphatically the law of necessity, to which a party may have recourse under certain circumstances to prevent any reasonably apprehended great personal injury which he may have reasonable ground to believe is about to fall upon him. If you believe that the defendant had reasonable cause to apprehend a design on the part of Frank Farris to commit a felony upon defendant, or to do him some great personal injury, and that there was a reasonable cause to apprehend immediate danger of such design being carried out, and he struck Frank Farris as charged to prevent the accomplishment of such apprehended design, you should acquit him on the ground of self-defense. It is not necessary to this defense that the danger should have been real or actual, or that the danger should have been impending and immediately about to fall. If you believe that the defendant, at the time he struck Frank Farris, had reasonable cause to believe and did believe these facts and he struck said Farris under such circumstances, as he believed, to prevent such expected harm, then you

should acquit him, but before you can acquit on the ground of self-defense you ought to believe that defendant's cause of apprehension was reasonable. You are to determine whether the facts constituting such reasonable cause have been established before you by evidence, and if such facts have not been established you cannot acquit the defendant on the ground of self-defense, even though you may believe defendant really thought his cause of apprehension reasonable. Words and epithets, however vile or grevious, will not justify an assault, and if you believe from the evidence that the defendant sought or brought on a difficulty with Frank Farris, or voluntarily entered into a difficulty with said Farris with the intent to kill him or do him some great bodily harm, then he could not excuse himself on the plea of self-defense.''

This instruction substantially covering the same subject, was approved in State v. Shoultz, 25 Mo. 128, and is cited with approval in a long line of subsequent cases. This instruction fairly and fully covers the law of self-defense as applicable to the facts developed at the trial of this cause. There was no error in giving this instruction.

Appellant complains of the action of the court in refusing the instruction requested by the defendant. It was as follows: ''The court instructs the jury that if you find and believe from the evidence that the defendant, L. M. Tooker, was the agent of the railroad company, and was in charge of the depot building and premises at Billings, Missouri, on December 24, 1903, and that Farris was intoxicated and disorderly within said building, then the said defendant had the right to eject him from the premises, and had a right to use such force as was necessary to accomplish such ejectment; and while defendant had no legal right to attack the said Farris, yet if in attempting to eject him from the premises Farris resisted, and the defendant at any time had reasonable cause to believe and did believe

that he was in immediate danger of receiving great bodily harm at the hands of said Farris, then he had a right to defend himself against such danger, and to use such force as was necessary or apparently necessary to avert such danger.''

We have carefully considered in detail all the testimony disclosed by the record in this cause, and have reached the conclusion that the facts as presented did not warrant the giving of that instruction. All of the testimony, including the defendant's, shows that this assault was made outside of the office or depot room occupied by the defendant, and that the assault was not in fact made in an effort to eject him from the premises, or in repelling resistance to efforts to eject him, or in the preservation of order in the depot room, but, as shown by the testimony of the defendant, was made upon the theory of the right of self-defense in a difficulty arising in the usual and ordinary way of disputes between men. While it may be said that the defendant had the undisputed right to preserve proper order in the office or depot, where he had been placed as agent, and would be justified in using all reasonably necessary force to prevent any disorderly conduct on the part of persons who might come into his office, yet such right does not warrant him in following a person outside of the depot, who has gone outside in obedience to his request. The facts in this case show that the prosecuting witness left the depot office, and we are unwilling to say in this case that the prosecuting witness was compelled to abandon the platform and entire premises under the control of the agent under the circumstances as detailed in the trial of this cause. The defendant in his testimony says that he struck the prosecuting witness because he thought he was going to use a gun or something else upon him. If that was true, the instruction given by the court upon the law of self-defense fully covered his rights, and there was no necessity for the court to complicate the issues submitted

to the jury by giving the instruction requested by the defendant.

The jury had the witnesses before them in the trial of this cause, and doubtless all the tests as to their credibility and weight to be attached to their testimony were applied. It was their special province to pass upon the facts presented, and they found that the defendant was not justified in making the assault upon the prosecuting witness, and we are unable to assign any legal reason why such finding should be disturbed.

The judgment of the trial court should be affirmed, and it is so ordered.

*Gantt, J.,* concurs; *Burgess, P. J.,* absent.