THE STATE v. WILLIAM S. STARK, Appellant.

Division Two, March 19, 1907.

1. **INFORMATION: Uttering Forged Deed.** The information in this case, charging the defendant with having in his possession a certain false, counterfeited and forged instrument of writing purporting to be a deed, and with uttering the same, is sufficient, under section 2012, Revised Statutes 1899.

2. **UTTERING FORGED DEED: Evidence: Limited Education.** The defendant was charged with having in his possession a forged and counterfeited deed, knowing the same to be forged, with the intent of injuring or defrauding by uttering and passing the same as true. *Held*, that it is not essential to his conviction under the charge that he should have actually forged the said deed or have personally fixed the name of the owner of the land thereto. So that, proof that he was a man of limited education and could only write his name falls far short of disproving the charge, for he was not charged with forging the deed.

3. ———: **Verdict: Sufficiency.** Where there is but a single charge in the indictment the verdict reading, "We the jury find the defendant guilty and assess his punishment at imprisonment in the penitentiary for a term of two years," is sufficient.

4. ———: **Venue.** Where defendant is charged with having in his possession a forged instrument and uttering the same with intent to injure and defraud, the venue is established by showing he had the deed in his possession in the county where the information was filed with the intent then and there knowingly to utter the same in said county.

5. ———: **Comparative Handwriting.** A note and chattel mortgage executed by defendant are admissible in evidence for the purpose of comparing the handwriting thereon with the signature to the forged deed which he is charged with having uttered.

6. **EXAMINATION OF DEFENDANT: No Exception.** Where no objection was made at the trial that the prosecuting attorney was permitted to examine defendant on matters not embraced in his examination in chief, and no exceptions were saved to such examination, that assignment of error is not before the appellate court for review.

7. **UTTERING FORGED DEED: Other Acts.** It is competent to permit the State to show that about the time of the commis-

State v. Stark.

sion of the crime charged of uttering a forged deed defendant had in his possession another forged deed from the same owner embracing the same land. And it is also competent under such a charge to permit the State to show that the signature of defendant's grantor and the signature of the grantor to defendant's grantor were both forgeries. Such evidence in each case is admissible to establish the fraudulent intent, notwithstanding it may also tend to prove defendant guilty of another distinct crime.

Appeal from Miller Circuit Court.—*Hon. Wm. H. Martin,* Judge.

AFFIRMED.

*Hazell & Lay* for appellant.

(1) The verdict does not find defendant guilty as charged in the information. The verdict does not set forth the elements of any crime. It says, "We, the jury, find defendant guilty and assess his punishment," etc. Guilty of what? Must the information and testimony be read to determine? The verdict should be sufficiently definite to show of what offense defendant is found guilty. State v. Pierce, 136 Mo. 134; State v. Crowin, 189 Mo. 663; State v. Steptoe, 1 Mo. App. 19; State v. Pollock, 105 Mo. App. 273; State v. Rowe, 142 Mo. 439; State v. DeWitt, 186 Mo. 61; Graham and Waterman on New Trial, p. 1378. The reasonable rule to be deduced from these authorities, considering the technicalities which should lodge about the liberty of the citizen, is that something should appear in the verdict designating the offense. The verdict should be in itself, if pleaded, a bar to further prosecution. State v. McGee, 181 Mo. 312; State v. Williams, 191 Mo. 205; State v. Miller, 190 Mo. 449. (2) The venue was not shown with that clearness required by the law. The evidence does not show that defendant uttered the deed from Brown to Wait, as charged in the information in Miller county. (3) Gra-

ham's testimony as to an alleged note of defendant and chattel mortgage which he, the said Graham, owned at the time of the trial, was clearly inadmissible. This note was not a note wherein Graham was payee, but was one endorsed to Graham by a third party, one Austin. Graham testified that he was not present when the note was given; that he had no business dealings with defendant for twenty years. The defendant did not admit the execution of either the note or chattel mortgage and the admission of both was clearly .prejudicial error. The best evidence would be that of Austin, the original payee. Like a great many other witnesses, whose testimony would have been the best evidence, no reason was assigned for Austin's absence. (4) The court erred in allowing defendant to be cross-examined on matters concerning which he was not asked on his examination in chief. Special counsel for the prosecution was allowed to ask him if he did not mail deeds at Tipton, and if he had not stated he had been in Independence. Defendant was not interrogated on either of these matters in his direct examination and his cross-examination on these matters constitutes reversible error. (5) In order to render signatures competent as a standard of comparison on an issue as to the genuineness of a signature, it is necessary that the genuineness of the signature offered as a standard be conceded by both parties. Doud v. Reid, 53 Mo. App. 553; McCombs v. Foster, 62 Mo. App. 303; State v. Thompson, 132 Mo. 301. (6) The demurrer offered at the close of the State's case should have been sustained. Eliminating all that evidence which appellant believes to have been improperly admitted, there was no case made against the defendant. This court, in a very late case (State v. Gordon, 199 Mo. 561), has laid down the rule that, where there is no substantial evidence of the defendant's guilt and the evidence can be so reconciled

as to show his innocence equally with his guilt, the case should be taken from the jury. (7) Defendant clearly established the fact that he could not have been present at Independence on the day the deed from Brown to Wait was executed and acknowledged. This was shown by an abundance of undisputed and unimpeached testimony, and the court failed to instruct upon this phase of the case. The presence of defendant at the necessary time and place must be shown as essential to the commission of a crime. State v. Woolard, 111 Mo. 248. On the question of alibi, generally, see: State v. Howell, 100 Mo. 628; State v. Harvey, 131 Mo. 339; State v. Tetlow, 136 Mo. 678.

*Herbert S. Hadley*, Attorney-General, and *N. T. Gentry*, Assistant Attorney-General, for the State.

(1) The information, which was duly verified by the affidavit of the prosecuting attorney, is sufficient in form and substance. R. S. 1899, sec. 2012; State v. Hathhorn, 166 Mo. 234; State v. Turner, 148 Mo. 206. (2) (a) The rule of law has long been established in Missouri that, upon an indictment for forgery, evidence is admissible tending to show that the defendant has been guilty of other forgeries than the one charged, committed about the same time. This, the courts hold, is proper in order to establish the fraudulent intent on the part of the defendant. Hence, no error was committed in permitting the State to prove that, about the time of the commission of the act charged, defendant forged and had in his possession another forged deed, which deed purported to convey title to the same land; and was a necessary link in the perpetration of the fraud attempted and consummated by the defendant on John and Frank Vernon. State v. Minton, 166 Mo. 613; State v. Myers, 82 Mo. 558; Underhill on Crim. Evid., sec. 423; 1 Wigmore on Evidence, sec. 312; 4 Elliott on Evidence, sec. 2990; 3 Greenl. on Evidence,

sec. 111. (b.) No error was committed by the trial court in admitting evidence tending to prove that the defendant forged the signature to the deed from Brown to Wait, and also forged the signature to the deed from Wait to defendant. Although said evidence tended to show that defendant was guilty of other and distinct offenses than the one charged, yet it was admissible in this case. State v. Kavanaugh, 133 Mo. 462. (3) Neither was error committed by the trial court in admitting in evidence the chattel mortgage and note for the purpose of comparison with the signatures to the alleged forged deeds, and then in permitting expert witnesses to testify that, in their opinion, defendant signed all of said documents. Defendant's signature to the note and chattel mortgage was "proved, to the satisfaction of the judge, to be genuine," as required by the statute. R. S. 1899, sec. 4679; State v. Thompson, 141 Mo. 416; Bank v. Hoffman, 74 Mo. App. 203. The evidence of the contradictory statements made by defendant to the various witnesses was not only admissible, but was of value in determining whether or not defendant knew that the deeds were forged. State v. Ferguson, 172 Mo. 678; 4 Elliott on Evidence, sec. 2723; State v. Benner, 64 Me. 289; Hinshaw v. State, 147 Ind. 362; Walker v. State, 49 Ala. 400; People v. Arnold, 43 Mich. 305; State v. Dickson, 78 Mo. 448 (4) There was not only substantial evidence of defendant's guilt, but the evidence was ample on that subject. While Mr. Sommerhauer would not swear positively that defendant was the man, yet he did state that it was his opinion that he was the man, and that he believed him to be the man, which is sufficient in law. State v. Howard, 118 Mo. 141; State v. Cushenberry, 157 Mo. 179; State v. Barrington, 95 S. W. 264. True, defendant denied the execution of the forged deeds and he also denied that he knew that they had been forged; but no one can read this record and be impressed with the innocence or good faith of defend-

ant. Hodge v. Hubb, 94 Mo. 503; Baldwin v. Whitcomb, 71 Mo. 651. While defendant and several members of his family testified to an alibi, yet the jury had a right to convict him in spite of said evidence. State v. Smith, 190 Mo. 704; State v. Harvey, 147 Mo. 69.

GANTT, J.—This prosecution was commenced on the 23rd of February, 1904, by information filed by the prosecuting attorney of Miller county, duly verified, wherein it is charged that the defendant on or about the 14th day of October, 1903, at the county of Miller, knowingly, unlawfully and feloniously had in his custody and possession a certain false, counterfeited and forged instrument of writing purporting to be a deed of conveyance of real estate situated in Miller county, Missouri, and described as the east half of the northeast quarter of the southwest quarter of the northeast quarter, all in section twelve, township forty-one of range fifteen, from W. F. Brown to W. J. Wait, and purporting to be made by the said W. F. Brown and to be his free act and deed and which said false, counterfeited and forged written instrument, to-wit, a deed from the said W. F. Brown to the said W. J. Wait for the land aforesaid, was in said information fully set forth according to the tenor thereof, and with a certificate of acknowledgment attached thereto, which purported to have been taken before and by one J. N. Craig, a notary public, at his office in Independence, on the 27th day of August, 1903, and was filed for record on the 14th day of September, 1903, in the office of the recorder of deeds of Miller county. The information then proceeded to charge further that "said deed and instrument of writing so purporting to be the act and deed of the said W. F. Brown purported and pretended to convey the land aforesaid to the said W. J. Wait, he the said W. F. Brown being then and there the owner of the land aforesaid, and by which said false and

forged instrument and deed so as aforesaid made and forged, the said real estate purported to be transferred from the said W. F. Brown to the said W. J. Wait and the title to the said land to be thereby affected, transferred and conveyed as in said deed specified and set out, and the said William S. Stark did then and there on the day and year aforesaid at the county and State aforesaid, unlawfully, knowingly and feloniously have the said falsely made, forged and counterfeited instrument of writing and deed hereinbefore set out and described, in his possession, then and there well knowing the same to be forged, counterfeited and falsely made, with the intent then and there and thereby to unlawfully and feloniously injure and defraud by then and there unlawfully and feloniously uttering and passing the same as true, and against the peace and dignity of the State.''

The defendant was put upon his trial at the September term, 1904, and was convicted, but was granted a new trial. Afterwards at the March term, 1905, the defendant was again put upon trial and was again convicted and his punishment assessed at two years in the penitentiary; from that judgment he has prosecuted this appeal.

The testimony tended to prove without any contradiction that the land described in the information was the property of W. F. Brown of Kansas City, and that he had never signed any deed to any person for said property. A short time before the date of the forged deed, the defendant visited L. M. Musser, a lawyer and abstractor at Tuscumbia, and requested Musser to ascertain the name of the last record owner of this real estate. Mr. Musser examined his abstract books and told the defendant that W. F. Brown was the last owner. The defendant then desired to know where Brown lived. Musser was unable to tell him his residence, but told him he could ascertain by

examining the deed in the recorder's office, and gave him the book and page in which said deed was recorded. Shortly after this, the defendant stated to Mr. Marshall, the cashier of the bank in Tuscumbia, that he had bought this real estate from a man by the name of Wait, and he needed a small sum of money to finish paying for the same, and that he had instructed Wait to mail the deeds directly to the bank. Marshall already had a chattel mortgage on some of defendant's live stock, and defendant agreed to give the deed of trust on this real estate after he got his deeds and include both loans in one. In a few days, Marshall received an envelope containing the deed from W. F. Brown to W. J. Wait, and a deed from Wait to the defendant; both deeds purporting to convey the land in question. On the Sunday following, the defendant, who lives several miles west of Tuscumbia, came to that town and learned from Marshall that he had received both deeds, and he thereupon requested Marshall to have them both recorded, which was done. The defendant then gave the bank a deed of trust on said real estate. In the course of a few weeks, the defendant negotiated a sale of said real estate to John and Frank Vernon. The defendant and Mr. Vernon went together to Eldon where the deed was prepared, and the defendant and his wife signed the same, conveying this land to the Vernons. The defendant at that time exhibited the two deeds, which he said conveyed a perfect title from Brown to Wait and from Wait to defendant, both having been duly recorded. Upon examining the deeds, it was discovered that the wife of Wait had not joined in the deed and the Vernons objected to the title for that reason. Defendant assured them that it was all right, that the bank had taken a deed of trust on the property, and he could sell it the next day for more money. He refused to give them any time to investigate or think about the matter, but insisted that the trade must be

closed then, or not at all. After advising with the gentleman who was writing the deed and receiving assurance from him that he did not think they would have any trouble, the Vernons accepted the defendant's deed and paid him the money therefor, and the defendant then paid off the mortgage to the bank of Tuscumbia. The Vernons were saw-mill men, and they went to work to cut the timber off of this land, but soon received notice from Mr. Brown to the effect that he owned the land and they must cease cutting the timber. Thereupon the Vernons went to see the defendant and asked him where he purchased this land and he stated to them that he met Wait in Versailles and also in Sedalia, and that he finally bought the land from Wait at Tipton. He also stated that after Wait gave him the deed at Tipton, he (defendant) mailed said deeds to the bank of Tuscumbia. To other witnesses the defendant stated that he did not find his man at Versailles nor at Sedalia, but had to go to Independence; that Independence was a nice big town and he had a good trip up there. The deed from Brown to Wait purported to have been executed before a notary public named Craig at Independence; and the deed from Wait to the defendant was executed before James Sommerhauer, a notary public at Tipton, Missouri. The defendant stated that he had paid the money to Wait, but did not have anything to show that he had paid it, but he did not expect any trouble to result on that account. The Vernons then visited Sommerhauer and took him with them to see the defendant and he recognized the defendant as the man who signed the deed before him, and gave his name at the time as Wait. Sommerhauer testified at the trial that the defendant in his opinion was the man who acknowledged the deed as Wait. The State's evidence further tended to prove that the signature to the deed from Brown to Wait was in the defendant's handwriting as was also the deed from Wait

to defendant. The deed from Brown to Wait was acknowledged August 27, 1903, and the deed from Wait to the defendant was acknowledged August 29, 1903. The defendant's evidence tended to prove that on the date of the alleged forgery of the deed from Wait to defendant, the defendant was not in Tipton, and did not know anything about the execution of the deed by Wait, and did not know anything about the execution of the deed from Brown to Wait; but that he and his wife and two daughters drove in a wagon from his farm to Eldon, transacted some business there that day and returned home, when he went to seek employment on a new railroad a few miles away. Defendant further stated that he met this man Wait in Eldon; that Wait told him he had just traded for this Brown land, and would like to go and see it; that thereupon defendant took Wait in his wagon and drove around the road by the Brown land and pointed it out to Wait, and that Wait said he did not like it and wanted to sell it. The defendant then agreed to buy the land provided he could raise the money, and then Wait left him and he did not know where he went; that afterwards the defendant made arrangements to raise the money and took it with him to Versailles, where he got the station agent to write a letter to Wait at Sedalia to the effect that he would be there the next day and pay him for the land. In the meantime, Wait had mailed the deeds to the bank at Tuscumbia, and the defendant had been informed that they were all right. That the defendant then went to Sedalia, met Wait at the depot and paid him the money. Wait went into the station and had the station agent write a receipt, which he signed and gave to defendant, but the defendant had lost the receipt. Defendant denied that he signed any of the forged deeds, and also testified that he was an illiterate man and could only write his name. The members of defendant's family corroborated him in regard to his

whereabouts on the day of the alleged forgery, and also as to his inability to write anything except his own name.

1.   The information in this case is bottomed upon section 2012, Revised Statutes 1899, and is sufficient to constitute a valid charge under that section. [State v. Hathhorn, 166 Mo. 229; State v. Mills, 146 Mo. 195.]

2.   It is urged by the learned counsel for the defendant that it is highly improbable and unreasonable to believe that the defendant could have been guilty of the offense charged, for the reason that his evidence tends to show that he was a man fifty years of age, of little or no education, and according to his testimony, and that of his family, he could only write his name in his business transactions.   This contention ignores the nature of the charge in the information.   The defendant was not charged with forging the deed, but with having in his possession the said forged and counterfeit instrument knowing the same to have been forged, with the intent of injuring or defrauding by uttering and passing the same as true.   It is not at all essential to his conviction under this charge that he should have actually forged the said deed or have personally affixed the name of the said Brown thereto.   So the proof of his limited education and want of ability to write  the instrument falls  far  short  of  disproving that he had said forged instrument in his possession knowing the same to have been forged and counterfeited and with intent to defraud by uttering the same as genuine.   [State v. Allen, 116 Mo. l. c. 554, 555; State v. Hathhorn, 166 Mo. 236.]   There was ample evidence to justify the jury in finding not only that the deed from Brown to Wait was forged, but that the defendant had knowledge of such forgery and was in the possession of said forged and counterfeit instrument with the intent to utter and pass the same as a genuine deed.

3.   The verdict of the jury is challenged as insuf-

ficient. There was but one single charge in the indictment, and upon that charge the jury returned a verdict of, "We, the jury, find the defendant guilty and assess his punishment at imprisonment in the penitentiary for a term of two years." This verdict was sufficient. [State v. Berning, 91 Mo. 82; State v. Elvins, 101 Mo. 243.] The verdict in this case is easily distinguished from the cases of State v. DeWitt, 186 Mo. 61, and State v. Cronin, 189 Mo. 1. c. 673.

4. There is no merit in the contention that the venue was not sufficiently established. There was abundant evidence tending to show that the defendant had the forged deed in his possession in Miller county with the intent then and there knowingly to utter the same in said county.

5. The instructions one and two given on behalf of the State were full and fair and exceedingly liberal towards the defendant. It is unnecessary to burden this opinion with reproducing these instructions.

6. During the trial, the State offered in evidence a note and chattel mortgage executed by the defendant to one Austin, and by Austin endorsed to Graham. This note was offered for the purpose of proving the handwriting of the defendant for the purpose of comparing it with the signatures to the alleged forged deed. This was clearly admissible under section 4679, Revised Statutes 1899.

7. As to the proposition advanced that the court erred in permitting counsel for the State to cross-examine the defendant on matters concerning which he was not examined in chief, it is sufficient to say that no objection was made to his examination by the attorney for the defendant and no exceptions saved and of course the matter is not before us for review.

8. No error was committed by the court in permitting the witnesses Musser, Howenstein and Harrison to testify as experts on handwriting. They were

qualified, but if they were not, the motion for new trial nowhere assigns their testimony as ground of error.

9. No error was committed in permitting the State to prove that about the time of the commission of the act charged, the defendant had in his possession another forged deed from Wait to himself, which purported to convey title to the same land. It was entirely competent to prove that the defendant forged the signatures to the deed from Brown to Wait and from Wait to defendant. The rule has long been established in this State that upon an indictment for forgery, evidence is admissible to show that defendant has been guilty of other forgeries than the one charged, committed about the same time. The evidence is admitted to establish the fraudulent intent on the part of the defendant, notwithstanding such evidence may also tend to prove the defendant guilty of another distinct offense.

10. There are various other objections, among them, the proposition made by the defendant after his conviction, that he was prosecuted by information and not by indictment, but we have carefully considered all these points and in our opinion none of them constitute reversible error. Accordingly, the judgment of the circuit court is affirmed.

*Fox, P. J.,* and *Burgess, J.,* concur.