STATE OF MISSOURI, Respondent, v. CLARENCE O. TAYLOR, Appellant.—
No. 40961.—214 S. W. (2d) 34.

Division One, October 11, 1948.

*Farrington & Curtis* and *E. C. Curtis* for appellant.

*J. E. Taylor,* Attorney General, and *Aubrey R. Hammett, Jr.,* Assistant Attorney General, for respondent.

[35] CLARK, J.—Appeal by defendant from a conviction of a criminal offense in the circuit court of Greene County.

The information charged that defendant, on a day named, in Greene County, Missouri, did "wilfully, unlawfully and feloniously dynamite fish in the waters of Greene County, Missouri, in violation of Section 20 of the Wildlife and Forestry Code of the State of Missouri," etc.

The trial was to a jury which returned a verdict of guilty, and assessed defendant's punishment at a fine of $200.00. He was sentenced accordingly.

The Attorney General and defendant's counsel have commendably submitted this appeal upon a brief stipulation of facts which shows: that on the date alleged defendant and two others exploded dynamite in a pond in Greene County and killed some fish; that the pond is located wholly on the land of Lloyd Combs, is not connected in any way with a river or any public waters and there is no way for fish to escape; that the only fish known to be in the pond were placed there several years ago by a brother of Lloyd Combs who took them from another private pond; that the pond has never been stocked with fish by representatives of the State, and is solely under the control of Lloyd Combs.

Appellant's assignments of error may be summarized as follows:

I. A private pond is not included within the term "waters of this State," as mentioned in our statute.

II. Title to fish reduced to one's possession by lawful means is released by the State to the taker.

III. The information is defective: (1) because it charges a violation of the Wildlife [36] and Forestry *Code* instead of the Wildlife and Forestry *Act*; (2) because it does not state the particular waters or stream where the act was committed; (3) a charge of dynamiting fish in "the waters of Greene County, Missouri," does not support a charge of dynamiting fish in the "waters of the State of Missouri."

We will first discuss the attacks made against the information. It is not well worded and, under some of the early decisions cited by appellant, this case would probably be reversed. However, appellant did not demur to the information nor move to quash. His first attack upon it was after verdict. The information charges the offense to have been committed in Greene County. It would have been better to have alleged the place with some particularity and to have followed the language of the statute by charging that the explosion was in the "waters of the State of Missouri," but there is nothing before us to show that appellant was misled or prejudiced in his defense by the imperfection of the information in these respects, nor in the designation of the statute as a "Code" instead of an "Act."

We hold that appellant's belated attack upon the information waived its defects. [State v. Biven, (Mo.) 151 S. W. (2d) 1114; State v. Granger, (Mo. App.) 199 S. W. (2d) 896; State v. Spidle, 342 Mo. 571, 116 S. W. (2d) 96.]

We now consider appellant's first and second assignments together.

Section 20, page 669, Laws of Missouri, 1945, in part, reads as follows:

"It shall be unlawful for any person to place any explosive substance or preparation in any of the waters of this state, whereby any fish which may inhabit said waters may be killed, injured or destroyed; and no person, by any such means, shall kill, catch or take any fish from said waters; provided, however, that explosive substances or preparations may be used in said waters, but only with the permission and under the supervision of the Commission. . . ."

The ownership of fish "while they are in a state of freedom, is in the State, not as a proprietor, but in its sovereign capacity as the representative and for the benefit of all its people in common; in other words, the right of property in fish, so far as any can be asserted before they are taken and reduced to possession, is common to all the people and cannot be claimed by any particular individuals." [22 Am. Jur., p. 666, sec. 2; 11 R. C. L., p. 1015, sec. 2.]

We agree with appellant that "title to fish reduced to one's possession by lawful means is released by the State to the taker," but it does not follow that fish even in a private pond have been so reduced to possession as to vest unqualified title to them in the owner of the pond and thereby destroy all regulatory power of the State. Nor do we concede that the waters in such a pond are not included in the term "waters of the State" as used in our statute.

Section 4 [Laws of Missouri, 1945, p. 665, Mo. R. S. A.] reads:

"The ownership of and title to all wildlife of and within the state, whether resident, migratory or imported, dead or alive, are hereby declared to be in the state of Missouri. Any person who fails to comply with or who violates this Act or any such rules and regulations shall not acquire or enforce any title, ownership or possessory right in any such wildlife; and any person who pursues, takes, kills, possesses or disposes of any such wildlife or attempts to do so, shall be deemed to consent that the title of said wildlife shall be and remain in the state of Missouri, for the purpose of control, management, restoration, conservation and regulations thereof."

That section, so far as the regulatory power of the State is concerned, seems to be all-inclusive and broad enough to include private as well as public waters.

It is true that the exclusive right to fish in a private pond is in the owner of the pond. It is also true that he is under no legal obligation to maintain such a pond. He may lawfully drain the

waters therefrom [37] if he can do so without damage to the property of others. "Furthermore, the title to fish asserted by the statute to be in the State for the purposes of preservation, propagation, and protection is not inconsistent with the qualified special property right of the owner of the soil where they are found, as against trespassers." [22 Am. Jur., p. 669, sec. 3.]

In the instant case it is unnecessary to define the special rights of the owner of the pond for the appellant is not such owner. On the oral argument it was admitted that appellant did not have permission from the owner of the pond to use explosives, but it was argued that, while he may be guilty of a different offense, he is not guilty of the offense charged. However, the same act may, and in this case we think does, constitute two separate offenses.

We find no case in point on the precise question here involved. Appellant relies upon the case of Milton v. State (Ark.), 221 S. W. 461. There it was held that a statute prohibiting fishing with nets "in any of the waters of this State" does not apply to waters wholly on the premises of an owner and connected in no way with other waters. The opinion does not mention a statute like our section four above mentioned. Also, the case differs from this one in that the defendants there were not trespassers; they had title to the premises under lease from the owner.

In Reid v. Ross, (Mo.) 46 S. W. (2d) 567, this court, en banc, construed our statutes as they read before being repealed and reenacted in 1945. We quote from that case:

"Section 8270 (the sections herein named are found in the revision of 1929) provides: 'It shall be unlawful for any person . . . to take, catch, or kill, any fish in any of the waters of this state, by . . . any . . . means other than . . . of the kind and at the time, and in the manner permitted by law.' The phrase, 'any of the waters of this state,' is used in various sections of article II, chapter 43, dealing with the preservation of fish and game. The words employed are broad and all-inclusive in their purport. That the Legislature intended them to be as all-comprehensive as their purport is clearly indicated by the exceptions it thought necessary to make. These exceptions are found in sections in pari materia with said section 8270. Section 8273, limiting the use of seines and nets, concludes as follows: 'Provided, that the restrictions of this section shall not apply to fish taken from private ponds and reservoirs when wholly upon the premises of owner or occupant. . . .' Section 8275, prohibiting the sale of game fish, contains this proviso: 'Provided, that nothing in this section shall be construed so as to prevent the sale of artificially propagated fish held in captivity.' This article contains no other exceptions or provisos which operate as a limitation upon the meaning naturally to be given to the words, 'any of the waters of this state.' We therefore construe those words to

284

mean any of the waters in this state in which fish do, or may, have a habitat, except private ponds and reservoirs when wholly upon the premises of owner or occupant, and waters in which fish are artificially propagated and held in captivity. Such an interpretation comports with the obvious purpose of the statute considered as a whole. See State v. Blount, 85 Mo. 543; Caldwell v. Erickson, 61 Utah 265, 213 P. 182; People v. Miles, 143 Cal. 636, 77 P. 666.''

However, in that case we reversed a judgment of the circuit court enjoining the State Game and Fish Commission from interfering with respondent in her claimed right to fish in any manner she desired in a body of water known as Sunshine Lake. The lake is a large body of water which was a part of the Missouri river until the river suddenly changed its course several years ago. The lake still connects with the river and allows free passage of fish when the river is at flood stage, which happens frequently. Respondent was only one of many riparian owners along the lake. The facts clearly distinguish that case from this, but the quotation above set out indicates the view of this court that the phrase ''any waters of this State'' should be given a broad meaning.

[38] We hold that our statutes as they now read apply to private waters, with some modification in favor of the exclusive owner or owners of such waters. [22 Am. Jur., p. 702, sec. 48.] Whatever the rights of such owner may be they do not extend to trespassers. Accordingly the judgment of the circuit court is *affirmed*. All concur.