State v. Martin.

## THE STATE v. CANDY MARTIN, Appellant.

Division Two, November 29, 1910.

1. **INFORMATION: No Indorsement of Witness: Time to Prepare for Trial: No Request.** If no names of witnesses are indorsed on the information, then, upon motion, it should be quashed, unless the prosecuting attorney offers to supply the omission; in which case, the defendant, if he requests it, should have a reasonable time after such omission has been supplied, to prepare his defense; but if he makes no such request, and answers ready for trial, his complaint that he was denied a reasonable time will be unavailing.

2. ————: **Embezzlement: Intent: Consent of Owner: Amount.** In the statute defining and denouncing the crime of embezzlement by any officer of any benevolent organization (sec. 4556, R. S. 1909), neither the intent of the defendant, nor the absence of the assent of the owner, is made an element of the crime, and therefore an averment in the information as to either is not required.

3. **VERDICT: General Sufficiency.** A verdict in an embezzlement case, reading, "We, the jury, find the defendant guilty and

assess his punishment at two years in the penitentiary. H. S. Newby, Forenon," is sufficient, if the information or indictment charges but one offense.

4. ————: **Misspelling: "Forenon" for "Foreman."** Neither bad spelling nor bad grammar will vitiate a verdict if its meaning is clear. The misspelling of the word "foreman" by writing it "forenon" is a harmless error.

5. **MISDEMEANOR: Instruction: Embezzlement: Within Three Years.** An instruction authorizing a conviction if the defendant within three years embezzled thirty dollars or more, and directing the fixing of his punishment at imprisonment in the county jail, or by fine, is error, there being evidence upon which the jury might have found a conversion of a sum less than thirty dollars. The felony limitation and the misdemeanor punishment should not be thus embodied in the same instruction.

6. ————: ————: ————: **Harmless Error.** But where defendant was convicted of a felony and his punishment fixed at two years in the penitentiary, and there was evidence from which the jury might well have found that he did embezzle money in excess of thirty dollars within three years, the giving of such erroneous instruction is not prejudicial. The error falls within the principle of law that where an offense of different degrees is charged, an erroneous instruction upon a degree lower than that upon which defendant was convicted is not reversible error.

7. **VARIANCE: Charged to be Treasurer: Shown to be Secretary-Treasurer.** There is no such variance between the allegations and proof as will authorize a reversal where the information charges that defendant as "treasurer of the local union" embezzled funds of the union, and the proof shows that he was "secretary-treasurer" of the union, the uncontradicted evidence showing that he was in fact the treasurer, and as such received the union's money.

8. **INSTRUCTIONS: Embezzlement: Positive and Direct Proof.** An instruction for the State in an embezzlement case that tells the jury that "it is not necessary that such criminal intent be proved by positive and direct evidence," is not error, when applicable to the facts.

9. ———— ————: **Weight and Character of Witnesses: No Proof.** An instruction telling the jury that in determining the weight, credibility and value to be given to the testimony of any witness, they might take into consideration the character of the witness, is not error, even though the character of no witness is shown by the evidence.

10. ————: ————: **Defendant as Witness.** An instruction telling the jury that the testimony of "the defendant should be

weighed by them by the same rules that govern the testimony of other witnesses," is not erroneous.

11. EMBEZZLEMENT: Checks: Indicted for Converting Money. In accordance with the rules of the union certain dues and charges owed by the members to the miners' union were presented to the coal company monthly by the union's secretary in what was called the "check-off list." These charges were deducted from the wages of the members by the coal company, and by it paid to the defendant as treasurer of the union by checks on a book, and the checks were cashed by defendant and the proceeds placed to his credit in the bank in which he kept his account. He is charged with embezzling money, and the evidence shows that, in this way, he received and deposited $114.19 more than he disbursed or turned over to his successor. *Held*, that there was no variance between the pleading and proof. He did not embezzle the checks; they were competent evidence to show what he received. If he embezzled anything it was money; and though it was not shown that he withdrew the money from the bank and used it, yet as it is shown that he received a certain amount, and disbursed a less amount for the union, there is evidence to support a conviction of embezzling money.

12. ———: Evidence: Auditor's Report. The report of a committee of the lodge, appointed to audit defendant's accounts as treasurer, which showed a balance belonging to the lodge in his hands, and which, on its being read to the lodge, he said was correct, is competent to be used as evidence against him.

13. DEMURRER TO EVIDENCE: At Close of State's Case. If defendant, after the court had overruled his demurrer to the evidence, offered at the close of the State's case, introduced evidence in his own defense, he cannot on appeal challenge the ruling of the court upon the demurrer. A defendant in a civil or criminal case, who offers evidence in defense, after his unsuccessful demurrer to plaintiff's evidence, takes the chance of supplying any lack of evidence in plaintiff's case.

14. EMBEZZLEMENT: Lodge Funds: Disbursement: Voucher. Although the by-laws of the lodge provided that no funds should be paid out of the treasury except upon vouchers signed by the president, yet if, without such voucher, defendant, as treasurer, paid out money for the lodge in good faith, he is not guilty of embezzlement, for in such case he did not convert the money to his own use.

Appeal from Randolph Circuit Court.—*Hon. A. H. Waller*, Judge.

AFFIRMED.

*Kimbrough & Gladney* for appellant.

(1) The court erred in giving instructions 1, 2 and 3 for the State. They submitted a question of fact not shown by the evidence, namely, that the defendant received into his possession money, when the evidence showed that he received checks. State v. Wissing, 187 Mo. 96; State v. Mispagel; 207 Mo. 574; Commonwealth v. Wood, 142 Mass. 459. (2) The very essence of the offense is the conversion of the property, hence the property must be described as of the form in which it was received and embezzled, and the proof must sustain the averment. Authorities supra. (3) The demurrer to the State's evidence should have been sustained, for the reason that there was a fatal variance in the allegations of the information and the proof, in this, that defendant was charged with the crime of embezzlement of money as treasurer of local union, when the proof showed the office he held was that of secretary-treasurer. State v. Mahan, 138 Mo. 112.

*Elliott W. Major,* Attorney-General, and *John M. Dawson,* Assistant Attorney-General, for the State.

(1) During the pendency of the motion the prosecuting attorney obtained leave to indorse on the back of the information the names of the State's witnesses. When a motion to quash the information is filed after the plea of not guilty is entered of record, the action of the court upon the motion cannot be convicted of error. State v. Jeffries, 210 Mo. 302; Ex parte McLaughlin, 210 Mo. 363. The prosecuting attorney may indorse the names of the State's witnesses upon the information during the pendency of the motion to quash, by leave of court, and the trial court will not be convicted of error. Authorities supra. (2) Instruction 2 correctly informs the jury that if they should find that the amount embezzled by the defend-

ant was less than thirty dollars they should assess his punishment at a fine or imprisonment in jail. This instruction was correct, as, if the amount embezzled was less than thirty dollars, the crime would be reduced to that of misdemeanor and punished in accordance with misdemeanor punishments. Instruction 3 told the jury that they must find that the defendant did convert the money to his own use with felonious intent to appropriate such money, and that the criminal intent may be inferred from all the facts and circumstances admitted in evidence. This is the usual and approved instruction. State v. Nolan, 111 Mo. 473; State v. Lipscomb, 160 Mo. 136; State v. Manley, 107 Mo. 364. (3) The verdict is certain, definite and complete. State v. Baldwin, 214 Mo. 290.

KENNISH, J.—On the 26th day of June, 1909, at the June term of the circuit court of Randolph county, the prosecuting attorney filed in open court an information charging the defendant, Candy Martin, with the crime of embezzlement. The information is based upon section 4556 of the Revised Statutes of 1909, and in substance charges that the defendant while acting as treasurer of Local Union No. 149 of the United Mine Workers of America, a trade organization, on the 1st day of May, 1908, at said county and State, fraudulently and feloniously embezzled the sum of $114.19, the money and property of said local union.

At the October term, 1909, of said court, the defendant filed a motion to quash the information. This motion was overruled by the court and at the same term the defendant was put upon his trial, convicted and his punishment assessed at imprisonment in the penitentiary for a term of two years. Motions for new trial and in arrest were filed in due time, overruled, and judgment pronounced in accordance with the verdict. The defendant appealed from the judgment to this court.

At the trial the evidence for the State tended to prove the following facts:

The United Mine Workers of America is an unincorporated trade organization of coal miners, having for its object the making of agreements as to the wages of laborers and the general well-being of its members in all matters connected with their employment. The organization has national, district and local unions and officers. There was a local union at Moberly in said county known as "Local Union No. 149, Mine Workers of America." The defendant was elected to the office of secretary-treasurer of said local union and assumed the duties of the office in the month of January, 1907. He served as such officer continuously until the first day of May, 1908.

It was provided in the by-laws of the local union, which were introduced in evidence, that the secretary-treasurer should have charge of all moneys belonging to the local union and pay all bills and current expenses when attested by the president. It was also made his duty to collect all money due the union, keep an account of the same and make monthly reports of the money received. It was the duty of the financial secretary of the local union to make out what was called a "check-off list" at the close of each month, showing the dues and charges which each member owed to the union. This list, in accordance with an understanding between the union and the coal company for which the miners were working, was furnished to the treasurer of the coal company each month and he deducted from the wages paid to each member the amount charged against him in the check-off list. The amounts so deducted were then included in one check by the treasurer of the coal company in favor of the local union. This check was delivered to the treasurer of the union and by him cashed and the money deposited to his credit as such treasurer in a local bank.

In the month of November, 1907, the books of the

defendant as treasurer were audited by a committee of the local union. This audit covered the period from the beginning of the defendant's term to the 1st day of November, 1907, and showed a balance of the funds of the union and supposed to have been in the treasury on the last mentioned date, in the sum of $52.24. The evidence shows that the defendant was present when the report of the committee was made and admitted its correctness, except that he said he lacked twenty cents of having that much money. He made no claim at that time that his disbursements as treasurer exceeded his receipts.

When the defendant went out of office on May 1, 1908, he left no funds in the treasury. A committee of the union again audited the books of the defendant about the time he went out of office and at first found a shortage in the amount of $60.09, but afterwards informed the defendant that the correct sum of the shortage was $164. This report, although referred to by the witness, was not introduced in evidence. The defendant was dissatisfied with the result of the committee's investigations and requested George Manuel, an officer of the district organization of the United Mine Workers of America, to examine and audit his books as treasurer of the local union. This officer, in the presence of the defendant, made a complete audit and accounting from the 1st of November, 1907, until May 1, 1908, and found that defendant should have had, at the close of his term as treasurer, the sum of $114.19 of the funds of the union.

The theory of the prosecution was that the offense charged against the defendant was committed between the 1st day of November, 1907, and the 1st day of May, 1908, covering a period of six months. The State introduced in evidence the checks made payable to the union and received by the defendant as treasurer during the six months covered by the State's case. These checks were cashed by the defendant and the proceeds

thereof deposited to his credit as treasurer of the union. The vouchers authorizing the disbursement of the funds by the defendant for the same period, were also introduced in evidence. It was shown by the testimony of witness Manuel, who examined the defendant's books at his request, that the total amount thus shown to have been received by the defendant for the said six months' period, including a small cash item, was $782.84. The amount disbursed during the same period, as shown by the vouchers in evidence, was $550.18, leaving a balance to the credit of the union of $232.66. At the time of the investigation by witness Manuel it was contended by the defendant that payments had been made by him as treasurer for which he had received neither voucher nor receipt, and the district officer, Manuel, gave defendant credit for such items in the total sum of $66.23. The defendant also disputed the item of $52.24, which the first auditing committee found to be due to the union on November 1, 1907, and a credit was also allowed him for that sum. After allowing defendant the foregoing credits there should have remained $114.19 of the funds of the union which the defendant should have had on hand at the close of his official term. When he went out of office he left no money in the treasury. He afterwards acknowledged having in his possession as funds of the union, the sum of 57 cents, which he paid to his successor.

The defendant was a witness in his own behalf and denied the conversion of any part of the funds of the union and testified fully as to his account and all of his transactions as treasurer of the union from the beginning to the end of his term. According to his testimony he paid out of his funds to members who had been overcharged in the check-off list and in various other ways, a total sum which, added to that shown by the vouchers, exceeded the total amount of his receipts during the term of office. The evidence disclosed the fact that the defendant was not an educated man, and there was

evidence tending to corroborate him as to the payment of money for the union without a voucher authorizing him so to do and without taking a receipt therefor.

Other facts in evidence will be referred to in the course of the opinion.

I. Appellant challenges the sufficiency of the information first by motion to quash and again by motion in arrest of judgment. The motion to quash attacks the information upon the ground that the names of the material witnesses for the State were not indorsed thereon. There is also a second ground, but as it merely states a reason in support of the first, it need not be separately considered.

It is shown by the record that while the motion was pending and undetermined, the prosecuting attorney, by leave of court, indorsed upon the information the names of the witnesses for the State, and that thereupon the court overruled the motion, to all of which defendant objected and saved his exceptions.

The statute requiring the indorsement of the names of the material witnesses for the State upon an indictment or information and the rights of the accused thereunder have been the subject of frequent consideration by this court. In the case of State v. Barrington, 198 Mo. 23, in an able opinion of this division, written by the late Judge Fox, and thereafter adopted as the opinion of the Court In Banc, the authorities were reviewed and the subject exhaustively treated and certain rules were formulated, the first of which fully covers the facts of the case in hand. At page 70 of that opinion this court said: "From these cases the correct rules as to the application of this statute may thus be stated: First—If there are no witnesses indorsed upon the indictment, then, upon motion, it should be quashed, unless the prosecuting attorney offers to supply such omission, then the de-

fendant should have a reasonable time after such omission has been supplied to prepare his defense."

No evidence was offered in support of the motion to quash and it is not disclosed by the record whether the court permitted the indorsement of the names of additional witnesses for the State, or whether as stated in the motion there was "not the name of any witness" indorsed upon the information at the time of the filing of the motion to quash, and that the prosecuting attorney under the ruling of the court indorsed the names of all the material witnesses. In the absence of any evidence in the record to the contrary we shall assume that the statement in the motion to quash is correct. The case then falls within the first rule as laid down by this court in the Barrington case.

Appellant correctly states that the purpose of this statute is to inform the accused of the witnesses upon whose testimony the State will rely for a conviction and thus to enable him to prepare for his defense at the trial, and appellant complains that the action of the court in permitting the indorsement of the names of the witnesses on the information and immediately thereafter placing defendant upon his trial, deprived him of the very right the statute was enacted to secure.

Under the rule announced in the Barrington case the court was clearly right in permitting the indorsement of the names of the witnesses for the State and then overruling the motion to quash, but that rule also recognizes and gives full force to the benign purpose of the statute by providing that when such indorsement is permitted and the motion to quash overruled, the defendant shall then be entitled to a reasonable time to prepare for trial. The record in this case fails to show that the defendant requested that he be given further time. On the contrary, it does show that he announced ready for trial, and having so an-

nounced he cannot now be heard to complain that he was denied reasonable time to prepare for his defense after the names of the witnesses against him were disclosed by the prosecuting attorney.

II.    The motion in arrest of judgment attacks the information upon four grounds, which are in substance as follows:  First, the information does not charge that the defendant made way with and secreted such money with the intent to convert the same to his own use.  Second, the information does not charge that defendant, after receiving said money as treasurer of said union, secreted the same and converted it to his own use with the intent to deprive the said local union of said money.  Third, the information does not charge that the defendant converted said money to his own use without the knowledge and consent of said local union.  The fourth ground is included in those preceding.

In some kindred statutes to that on which this prosecution is based the intent is made a constituent element of the offense and in others the criminality is made to depend upon the conversion being made "without the assent of the master or employer."  In all of such cases it is necessary to expressly aver the intent, or negative the knowledge or assent of the owner, in order to state a valid charge of the offense defined by the Statute.  But in the statute under consideration neither the intent of the defendant nor the absence of the assent of the owner is made an element of the crime, and therefore an averment as to either is not required.

In the case of State v. Noland, 111 Mo. 473, discussing the section of the statute under consideration, Gantt, J., speaking for this court, said: "The indictment in each of the several counts charges that the public moneys belonging to the State of Missouri by him received, and taken into his possession and cus-

tody, by virtue of his said office, for safekeeping, transfer and disbursement, at the county and State aforesaid, and on the days named, 'did unlawfully, fraudulently and feloniously convert to his own use, and embezzle,' closing with the usual conclusion, as in grand larceny. Section 3555 does not in specific words make the criminal intent an element in the offense further than is necessarily included in the words, 'converted to his own use,' or 'shall make way with or secrete,' and it has generally been ruled under similar statutes that an indictment substantially charging the crime in the terms of the statute is sufficient.''

And in the more recent case of State v. Sakowski, 191 Mo. 635, having before it the sufficiency of an indictment under a kindred statute, this court said: ''The offense is purely a statutory one, and the General Assembly in defining it has not made it a constituent element of the crime that the receiver should receive the same with intent to deprive the owner thereof. This section has been before this court for construction quite recently in the case of State v. Richmond, 186 Mo. 71. And the indictment in that case was assailed on the same ground upon which this indictment is challenged and it was said: 'By its terms, receiving the stolen property makes the case.' In the absence of a statutory provision that the defendant received the goods with intent to deprive the owner thereof or to aid the thief, no such averment is necessary or essential in an indictment or information for this offense.'"

III. The verdict of the jury is as follows: ''We, the jury, find the defendant guilty and assess his punishment at two years in the penitentiary. H. S. Newby, Forenon.'' Appellant assails the verdict as insufficient to support the judgment upon two grounds. First, because it fails to find the defendant guilty as charged in the indictment; second, ''because the verdict

was signed by H. S. Newby as 'forenon,' instead of 'foreman,' as required by law."

We have considered the questions thus presented and hold that they are without merit. The rule of law applicable to the question raised in the first ground is that in cases where the indictment or information charges but one offense a general verdict in form as the verdict in this case, is sufficient. [State v. Stark, 202 Mo. 210; State v. Elvins, 101 Mo. 243; State v. Steptoe, 65 Mo. 640.]

The misspelling of the word "foreman" is such a technical inaccuracy as not to require extended consideration. It is the settled law that "neither bad spelling nor bad grammar will vitiate a verdict when its meaning is clear." [12 Cyc. 689.] In the case of State v. McNamara, 100 Mo. 100, discussing an alleged error because of the misspelling of the word "penitentiary" in the verdict, this court held the mistake harmless, saying, "no one could for a moment mistake the meaning." [State v. Beverly, 201 Mo. 550; State v. Steptoe, 65 Mo. 640; Duncan v. Oliphant, 59 Mo. App. 1; Gurley v. O'Dwyer, 61 Mo. App. 348; 22 Ency. Pl. and Prac. 898.]

IV. Appellant complains of error in the giving of instruction numbered 2 on behalf of the State, and this assignment presents a question not at all free from difficulty. The instruction is as follows:

"The court instructs the jury that if they believe from the evidence beyond a reasonable doubt that the defendant did, within three years from and before the date of the filing of the information, to-wit, the 26th day of June, 1909, receive into his possession the money mentioned in the information, or any portion thereof to the value of less than thirty dollars, and that he received the same into his possession as treasurer of said Local Union No. 149, United Mine Workers of America, and by virtue of his official position

as such treasurer, and that he did, within three years prior to the filing of the information in this case, at the county of Randolph, in the State of Missouri, unlawfully, fraudulently and feloniously embezzle and convert the same to his own use, they will find the defendant guilty of embezzlement as charged in the information, and assess his punishment at imprisonment in the county jail not exceeding one year or by fine not exceeding one hundred dollars, or by both such fine and imprisonment.''

The statute upon which this prosecution is based fixes the penalty for its violation as prescribed ''for stealing property of the kind or the value of the article so embezzled, converted, taken or secreted.'' The offense, therefore, under the facts of this case, was a felony or a misdemeanor, accordingly as the money embezzled should have been found by the jury to have been of the value of $30 or over, or of less than that value.

A prosecution for a misdemeanor is barred by the Statute of Limitations in one year from the time of the commission of the offense, while in the case of a felony of this class under consideration, the limitation is three years.

The information in this case charged the defendant with the embezzlement of $114.19 of the value of $114.19, and therefore charged a felony, but under the law this charge included the lesser grade of the offense, a misdemeanor, and authorized a conviction therefor if the evidence at the trial disclosed an embezzlement of money of the value of less than $30. The evidence for the State tended to prove the felony as charged. For the defense the evidence tended to prove that the defendant was innocent of the conversion of any part of the funds held by him as treasurer of the union, and there was evidence from which the jury might have found a conversion of such funds in a sum and value of less than $30. The court evidently re-

garded the evidence as warranting the submission of the case to the jury under instructions authorizing a conviction of the felony or of the misdemeanor, or a verdict of not guilty, as they might find the facts from the evidence before them.

It is apparent that if the evidence justified the submission of the case to the jury on the hypothesis of the value of the money embezzled being less than $30, then the limitation of one year applicable in misdemeanor cases should have been incorporated in that instruction. On the contrary, as appellant complains, the court gave the felony limitation in the misdemeanor instruction, and thus invited a conviction for the misdemeanor by authorizing the jury to find the criminating facts within a period of three years, during two years of which time the defendant, under the law, was entitled to full and complete immunity from prosecution, even though the facts stood confessed.

From the foregoing it follows that the court was in error in giving instruction number 2. The question remains, was such error prejudicial to the defendant? If not prejudicial, then it will not entitle appellant to a reversal of the judgment.

Recognizing and giving full force to the principle of law that error is presumptively prejudicial, we are confronted in this case with the fact that the jury found the defendant guilty of a felony and thus necessarily found the money embezzled to have been of the value of $30 or over. Having found the facts in accordance with the testimony for the State, how could instruction number 2, predicated upon a value of less than $30, have prejudiced the defendant? The error in the instruction consists solely in the erroneous application of the Statute of Limitations and had no bearing or influence as to the true value of the property charged to have been embezzled. The result would have been the same had instruction number 2 correctly authorized a conviction only in case the offense was com-

mitted within one year prior to the filing of the information. If the defendant had been convicted of the misdemeanor instead of the felony a very different question would now be before this court, for in that case it would have appeared that the defendant had been convicted of the offense as defined in the erroneous instruction. As the matter thus stands the error falls within the principle of law that where an offense of different degrees is charged an erroneous instruction upon a degree lower than that upon which the defendant was convicted, is not reversible error.

In the case of State v. Smith, 80 Mo. 516, the defendant was convicted of an assault with intent to commit rape. The court had given an instruction, among others, authorizing a conviction of common assault, and upon appeal it was urged that the instruction was erroneous. Addressing itself to that contention this court said: "And as to the second instruction, given at the instance of the prosecuting attorney, which would have sanctioned a verdict of the jury for a common assault, it is scarcely necessary to say that as the jury have found the defendant guilty of a higher offense, such an instruction could have worked him no hurt."

We are aware that there are well recognized exceptions to the rule thus announced, but the case at bar does not fall within such exceptions.

For the foregoing reasons, although there was manifest error in instruction number 2, we are constrained to hold, under the statute, that it was not such error as tended "to the prejudice of the substantial rights of the defendant upon the merits."

V. The defendant is described in the information as "treasurer of the local union," and it is charged that as such officer he embezzled the funds of the union. In the by-laws of the local organization offered in evidence, the office held by the defendant is described as

"Secretary-Treasurer." The defendant at the trial objected to any evidence as to the duties of the secretary-treasurer, and now alleges error in the first instruction for the State, for the reason that the by-laws offered in evidence fail to show such an office as that of treasurer of the union.

The fact that the full designation of the office is secretary-treasurer would indicate that the defendant discharged the duties of secretary as well as the duties of treasurer. He was proceeded against in the information because of his alleged criminal misconduct as treasurer. The uncontradicted evidence showed that he was in fact the treasurer of the union, and if there was a variance between the information and the evidence as to the official title of the defendant, it was not such a variance as was material to the merits of the case and prejudicial to the rights of the defendant, and therefore falls within the provisions of section 5114, Revised Statutes of 1909, and "shall not be deemed grounds for an acquittal of the defendant."

VI. Error is also assigned in the giving of each of instructions numbered 3, 4 and 5 on behalf of the State. Instruction number 3 was assailed because the court instructed the jury that "it is not necessary that such criminal intent be proved by positive and direct evidence," and instruction number 4 is complained of because in it the jury were told that in determining the credibility, weight and value to be given the testimony of any witness they might take into consideration the character of the witness "when in fact the character of no witness whomsoever was shown by the evidence," and complaint is made of instruction number 5 because the court instructed the jury that "the testimony of the defendant should be weighed by them by the same rules that govern the testimony of other witnesses."

These instructions are such as are commonly given in a criminal case, when applicable to the facts in evi-

dence, as they are in this case, and are in form as approved by this court. [State v. Merkel, 189 Mo. 315; State v. Hilsabeck, 132 Mo. 358; State v. Cushenberry, 157 Mo. 188.]

VII.  It was shown in evidence that in accordance with the rules of the union certain dues and charges owed by the members of the union were presented to the coal company monthly by the secretary of the union in what was called a "check-off list." These charges were deducted from the wages of the members by the coal company and paid to the defendant as treasurer of the union by checks on a local bank.  The checks were cashed by the defendant and the proceeds placed to his credit in the bank in which he kept his account, Upon this state of facts it is insisted by appellant that there was a variance between the averment in the information of the embezzlement of the money, and the proof showing the receipt of checks by the defendant from the coal company.  The defendant objected to the evidence thus offered on the ground of a variance and again presented his contention in defendant's instruction number 5, which the court refused.  He complains of error in such refusal.

We do not deem it necessary to set out the instruction requested by the defendant.  The evidence offered by the State fully supported the charge of the unlawful conversion of the money.  There was no evidence tending to prove a conversion of the checks.  In receiving and cashing the checks and in depositing the proceeds to his credit in the bank as treasurer of the union the defendant was guilty of no wrongdoing, but was acting in accordance with his duties as treasurer. The conversion and embezzlement, if any, was of the money placed to the credit of the defendant, and while in his care and custody in the bank.  The checks were not embezzled.  They were cashed by the defendant and

returned to the makers thereof as was contemplated by the parties to the transactions.

The authorities cited by appellant upon this point do not lend support to his contention. In the case of State v. Mispagel, 207 Mo. 557, it appeared from the evidence that the defendant was the cashier of the St. Charles Savings Bank, located in the city of St. Charles, in St. Charles county; that as such cashier he drew a draft in the usual form in favor of the Orthwein Investment Company for one thousand dollars and drawn on the American Exchange Bank of St. Louis. The St. Charles Savings Bank had an account with the bank upon which the draft was drawn by the defendant. The defendant sent this draft to the Orthwein Investment Company of St. Louis, which company collected the proceeds and placed the same to the credit of the defendant on his individual account. The defendant was charged in St. Charles county with the embezzlement of one thousand dollars, the money of the St. Charles Savings Bank; he was convicted and on an appeal this court held the evidence insufficient to support the judgment, not, as appellant contends in this case, for the reason that the information should have charged the embezzlement of a draft instead of the money, but because the venue of the conversion and embezzlement was in the city of St. Louis, where the funds were transferred from the account of the St. Charles bank and placed to the credit of the defendant, in accordance with his directions. In passing upon the Mispagel case this court cited with approval the case of State v. Bacon, 170 Mo. 161, the facts of which as to the point now in hand were almost identical. In the Bacon case the defendant had been given a pension check in Douglas county by the owner thereof with authority to collect the amount of money due thereon in Wright county. Bacon collected the money in Wright county as directed and converted the same to his own use. He was tried in Douglas county on the charge

of embezzling the checks and was acquitted.   He was thereafter tried in Wright county upon the charge of embezzling money collected on the check and was convicted and appealed to this court.   In an opinion by Judge Burgess this court held that the offense was committed in Wright county by the conversion of the money and affirmed the judgment.   That case is directly in point and is authority against appellant's position in this case.

VIII.   Many objections were made and exceptions saved to the evidence introduced by the State, some of which have been sufficiently answered by what has been said in passing upon the instructions.

It should be observed that because of the confused and imperfect condition of the record it is difficult to pass intelligently upon the questions presented as to the admissibility of the testimony objected to.   The bill of exceptions calls for the insertion of exhibits and documentary evidence, which the clerk failed to incorporate, and we are left in the dark as to the character of such omitted testimony.

The witnesses speak of the reports of two separate auditing committees, each of which committees audited the defendant's account with the union, one covering defendant's official term from the beginning to November 1, 1907, and the other covering the remaining six months of his term of office.   The first report was made in open lodge in the presence of the defendant, and the evidence shows that he expressly approved it, except, as he said at the time, that he lacked 20 cents of having as much money on hand as the report showed.   While this report does not appear in the record, frequent references are made thereto by the witnesses, and testimony was introduced showing the amount which the report of the committee found should have been in the defendant's hands as funds of the union.   As the defendant gave his assent to

this report at the time, it was competent to be used in evidence against him. Besides, as the defendant was given full credit at the trial for the item of $52.24, the amount supposed to have been on hands as shown by the report of the first committee, the defendant could not have been prejudiced by such evidence. The record fails to disclose that the report of the second committee covering the last six months of the defendant's term was introduced in evidence.

It is finally insisted that the court erred in not giving the instruction in the nature of a demurrer to the evidence, directing an acquittal of the defendant at the close of the evidence for the State. After the court had refused defendant's instruction, evidence was offered by the defendant upon his defense, and therefore he cannot now properly challenge the ruling of the court in refusing to give said instruction. The rule upon this subject is the same in criminal as in civil cases, viz., that when a defendant, after an unsuccessful demurrer to the plaintiff's evidence, offers evidence upon his defense, he takes the chance of supplying any lack of evidence in the plaintiff's case. [State v. Meagher, 49 Mo. App. 571.]

But as one of the grounds of the motion for a new trial is that the verdict is against the evidence, the question as to the sufficiency of the evidence, upon a review of the entire record, is thus fairly presented for our consideration.

The substance of the evidence is set out in the statement of facts accompanying this opinion. It is not necessary to repeat it here. Briefly, the salient facts proved in support of the charge against the defendant are the following: There were practically no funds in the treasury when the defendant assumed the duties of his office and he was charged with none. The funds he received as treasurer were paid to him by check and these checks were offered in evidence, so that there is little room for uncertainty as to the

amount of trust funds which came into defendant's hands as treasurer of the local union. The doubt, if any, arises as to the amount disbursed by him in the discharge of the obligations of the union. The by-laws provided that no money should be paid out of the treasury except upon vouchers signed by the president and if this requirement had been complied with no uncertainty would have existed as to the defendant's accounts. The defendant testified that this by-law was not strictly adhered to and that many claims were paid by him without authority of a voucher, and in this he is corroborated by other witnesses. Indeed, the representatives of the union in auditing the defendant's books allowed liberal credits for such unauthorized payments. The contest at the trial was waged mainly as to the amount of trust funds paid by the defendant, for which he had neither voucher nor receipt. If in fact he did pay out money for the union in good faith, it is immaterial in this case that he did so without proper authority. For if he paid it for the union he could not have converted it to his own use. Upon this issue defendant attempted to meet the evidence for the State, and went into his official transactions thoroughly during the entire term of his office as treasurer. The jury heard the defendant's testimony and that of his witnesses, as well as the witnesses for the State, and while there is much in this record that is unusual and unsatisfactory in passing upon the question of the sufficiency of the evidence, yet we cannot say as a matter of law that there was not evidence authorizing the verdict of the jury, and it is not the province of this court to weigh the evidence.

Finding no reversible error in the record the judgment is affirmed. *Gantt, P. J.,* and *Burgess, J.,* concur.