# THE STATE v. CHARLES ELLIS, Appellant.

## Division Two, November 19, 1921.

1. **APPEAL: No Brief or Assignments.** On an appeal from a judgment in a felony case, where no brief is filed, no assignment of errors is made, and no motion in arrest of judgment was filed below, the Supreme Court looks to the motion for a new trial alone to determine whether error sufficient to warrant reversal occurred at the trial.

2. **DEMURRER IN CRIMINAL CASE.** A defendant in a felony case who introduces testimony in his own behalf is in no proper position to challenge the overruling of his demurrer offered at the close of the State's case; but if in his motion for a new trial he challenges the sufficiency of the evidence on the whole record to sustain a conviction, that question is presented for review on appeal.

3. **CONSPIRACY: Murder.** A conspiracy to commit murder may be inferred from the facts and circumstances in evidence. If the facts and circumstances are sufficient to authorize the inference that defendant and his companion acted in pursuance to a common purpose to commit murder, a verdict of guilty will be upheld, although the companion did the actual shooting.

4. **INSTRUCTION: Murder in Second Degree.** Where the evidence tends to show murder in the first degree, and defendant is convicted of murder in the second degree, he cannot complain that a proper instruction on murder in the second degree was given, nor that the court gave one on murder in the first degree.

5. **———: Circumstantial Evidence.** It is the statutory duty of the court to instruct on circumstantial evidence, where the inference of guilt is to be inferred from facts and circumstances, for then such an instruction is necessary for the information, of the jury in reaching their verdict.

6. **DEFENDANT AS WITNESS: Cross-Examination.** The attorney for the State, in the cross-examination of defendant, has the right to go into questions covered by his direct examination.

7. **ARGUMENT TO JURY: Preservation for Review.** To attach to the motion for a new trial excerpts from the argument to the

jury made by the attorney for the State, no part of which is incorporated in the bill of exceptions, is not sufficient to preserve them for review on appeal. Nor is there any basis to complain of such argument on appeal if no exceptions to them were saved in the trial court.

8. **WITHDRAWAL OF JURY: No Exception.** A complaint on appeal cannot be based on the refusal of the trial court to withdraw the jury pending a decision upon the competency of certain testimony, if there was no ruling on the request and no exception was saved by appellant.

9. **INSTRUCTION: Refusal: Covered by Others.** It is not error to refuse an instruction requested by defendant where it is but a repetition of others given and the matters it embraces are fully covered by such others.

10. **MOTION FOR NEW TRIAL: General Assignments.** An examination of the entire transcript disclosing no error actually committed by the trial court, the judgment adjudging defendant guilty of murder in the second degree is affirmed; but DAVID E. BLAIR, J., and HIGBEE, P. J., do not concur with that part of the opinion announcing that a general assignment in the motion for a new trial that the verdict was the result of passion and prejudice on the part of the jury and that error was committed in the admission and exclusion of testimony is insufficient, but express themselves as not satisfied with rulings heretofore announced attempting to distinguish between such assignments in criminal and civil cases.

Appeal from St. Louis City Circuit Court.—*Hon. Benj. J. Klene,* Judge.

AFFIRMED.

*Jesse W. Barrett,* Attorney-General, and *Robert W. Otto,* Assistant Attorney-General, for respondent.

(1) Mere allegations of passion and prejudice present nothing for review. State v. McBrien, 265 Mo. 594, 604. (2) The court did not commit error in overruling appellant's instruction in the nature of a demurrer requested by appellant at the close of the State's testimony-in-chief. The record discloses that there is substantial evidence upon which to submit the case to the jury. State v. DePriest, 232 S. W. 83; State v. Fields, 234 Mo.

615, 627; State v. James, 216 Mo. 394, 407; State v. Wooley, 215 Mo. 620, 687; State v. Belknap, 221 S. W. 39. Defendant waived his right to insist upon his demurrer at the close of the State's case by introducing his own evidence. State v. Belknap, 221 S. W. 45; State v. Mann, 217 S. W. 69; State v. Martin, 230 Mo. 680, 700; State v. Lackey, 230 Mo. 707, 713; State v. Fuller, 213 S. W. 98. (3) Appellant alleges that the court erred in admitting illegal, improper, incompetent and prejudicial evidence, introduced on the part of the State over the timely objections and exceptions of the defendant. The foregoing objection to the evidence is not before the court for review. The particular testimony complained of should be indicated in the motion for new trial. State v. Holden, 203 Mo. 581; State v. Brown, 168 Mo. 449, 474; State v. Whitsett, 232 Mo. 511, 529. (4) The cross-examination of the witness was not improper, illegal or prejudicial, nor was the assistant circuit attorney guilty of misconduct, nor did the court err in permitting him to ask the witness prejudicial questions. (a) A witness for the defendant who testifies to the latter's good character may, on cross-examination, be interrogated as to his sources of information and his knowledge of the character of the accused, although other and independent crimes charged against the defendant may thereby be disclosed. State v. Crow, 107 Mo. 342; State v. Boyd, 178 Mo. 2, 17. (b) The rulings of the trial court as to the admission of evidence are not before this court for review. A mere objection to the testimony, without stating any grounds therefor, will not require an examination into the admissibility of the evidence. State v. Westlake, 159 Mo. 669, 679; State v. Decker, 217 Mo. 315, 325; State v. Bell, 212 Mo. 111; State v. Harris, 199 Mo. 716, 723. (5) Cross-examination of the defendant was proper. A careful examination of the evidence brought out on cross-examination of the defendant does not disclose that he was asked questions which referred to the character and criminal records of the other de-

fendants in the indictment. Cross-examination need not be confined to a mere categorical review of the matters stated in direct examination. State v. Meyers, 221 Mo. 613; State v. Foley, 247 Mo. 638; State v. Miller, 190 Mo. 463; State v. Miller, 156 Mo. 85. (6) Defendant was convicted of murder in the second degree, he cannot complain of a given instruction on murder in the first degree. State v. Lewis, 264 Mo. 420, 430; State v. Sharp, 233 Mo. 269, 288; State v. Green, 229 Mo. 642, 654; State v. Wilson, 250 Mo. 323, 329. (7) The court did not err in giving an instruction on murder in the second degree. There was sufficient evidence to sustain a verdict of guilty of murder in the second degree. State v. Morehead, 271 Mo. 84, 88; State v. Fuller, 213 S. W. 98; State v. Fields, 234 Mo. 615, 624; State v. Howard, 231 S. W. 255. (8) Where the law, as declared by a requested instruction, is fully covered by other instructions given by the court, a requested instruction is properly refused. State v. Rose, 271 Mo. 17, 28; State v. Grant, 152 Mo. 57, 71; State v. Bowman, 213 S. W. 64, 65; State v. Shellman, 192 S. W. 435; State v. Gilbert, 186 S. W. 1003. (9) The court did not err in failing to instruct on all the law in the case. This point is not before the court for review. The record fails to show that appellant offered or requested any instruction, and fails to show that appellant excepted at the time, to the failure of the trial court to instruct on all of the law applicable to the case. State v. Pfeifer, 267 Mo. 23, 29; State v. Goldsby, 215 Mo. 48, 57; State v. George, 214 Mo. 262, 270; State v. Gaultney, 242 Mo. 388. (10) The court did not err in instructing on circumstantial evidence. Where a conviction is sought on circumstantial evidence alone, an instruction on circumstantial evidence becomes necessary. State v. Bobbitt, 215 Mo. 10, 43; State v. Donnelly, 130 Mo. 642. (11) The court did not err in failing to withdraw the jury for the purpose of the court passing on the admissibility of evidence. (a) The statements of a defendant when arrested on a charge of committing

a crime are always admissible against him. State v. Dale, 210 Mo. 664, 676; State v. Wilkins, 221 Mo. 444, 448; State v. Prunty, 276 Mo. 359, 376. (b) It is not reversible error not to send the jury out during the preliminary hearing as to the admissibility of evidence. State v. Stebbins, 188 Mo. 387, 399. (c) This point is not before this court for review. There was no objection made or exception saved to the refusal of the court to withdraw the jury. State v. Stebbins, 188 Mo. 387, 399. (12) The alleged improper remarks of the assistant circuit attorney are not set forth in the bill of exceptions. Therefore the question as to whether or not such remarks were proper will not be reviewed by this court. State v. Arnold, 267 Mo. 33, 41; State v. Brooks, 202 Mo. 106, 118; State v. McAfee, 148 Mo. 370, 380. (a) Alleged improper remarks cannot be shown by affidavit. State v. McCarver, 194 Mo. 717, 740; State v. Welsor, 117 Mo. 570, 583; State v. Lamb, 141 Mo. 298, 305. (b) It is not sufficient to set forth the remarks of counsel in his argument to the jury in the motion for new trial. State v. Bulling, 105 Mo. 204, 226; State v. McDaniel, 94 Mo. 301, 306.

REEVES, C.—Appellant was one of four defendants charged with murder in the first degree for the killing of Henry Krallman at the City of St. Louis on the night of the 25th day of July, 1919. The information was of approved form and its sufficiency was never questioned.

Appellant had a severance, and upon his trial the jury returned a verdict of guilt for murder in the second degree only, and fixed his punishment at imprisonment in the penitentiary for a term of twenty-five years. His motion for a new trial, having been overruled, he perfected his appeal to this court, but has filed no brief and has made no assignments of error. Under the circumstances and in the absence of a motion in arrest of judgment, we look alone to the motion for a new trial to determine whether error sufficient to warrant reversal

occurred upon the trial. [State v. Maggard, 250 Mo. 335; Sec. 4106, R. S. 1919.]

Of the twenty-three assignments of error in the motion for a new trial, several were mere repetitions and all may be condensed into the following:

(a) Insufficient testimony to warrant conviction; (b) Passion and prejudice of the jury; (c) Error in instructing the jury on murder in first and second degree, and instructing on circumstantial evidence; (d) Error in the admission of testimony; (e) Misconduct of the State's Attorney in his cross-examination of the defendant's witnesses and in his closing argument; (f) Failure to withdraw the jury while the question of the admissibility of certain questions was being considered by the court; (g) Error in refusing to give appellant's requested instruction No. 2.

About 11:30 p. m. on July 25th, 1919, Henry Krallman, the deceased, was shot and killed in his saloon on the southeast corner of Marcus and McCaffery streets in the City of St. Louis. McCaffery Street runs east and west and Marcus Street runs north and south, Ashland Street being one block north of and parallel to McCaffery, and Cora Avenue being one block east of and parallel to Marcus.

At the time of the tragedy deceased was apparently alone in his saloon, which faced east on Marcus Street. He lived with his family upstairs over his saloon and grocery store, the latter facing north on McCaffery.

Lillian Krallman, a daughter of deceased, was upstairs, ready to retire, when she heard two shots down in the saloon; she went to the north window of the room, looked out and saw two men, one coatless, running north up the terrace and across the lawn of a cottage on the north side of McCaffery Street. She then went down to the saloon where she found deceased lying on the floor dead with a bullet wound in the head. There was no controversy about the killing. Other witnesses saw two men run north immediately after the two shots, the one being

a short coatless man following a taller man wearing a dark suit.

A few minutes prior to the tragedy an automobile without lights stopped, facing east on Ashland and on the south side thereof, and only a few feet east of Marcus. This was a short block north of the saloon. Two men got out of the car, one short and coatless and the other tall, wearing a dark suit. The driver of the car said he would drive around and meet them at the same place, to which one of the two replied, "You be sure and be here." The car then drove east on Ashland, turning and disappearing to the north on Cora, returning in a few minutes to the same place. In the interim the two men walked south on Marcus, soon two shots were heard, and then the same two men came running back to the waiting automobile, the taller man somewhat in front, and as they jumped on the car the shorter man was heard to say, "I killed him." The car then proceeded rapidly east with lights on and disappeared. Shortly thereafter defendant and John O'Donnell, Walter G. Ballman and Timothy McCarthy appeared together in one or more saloons where they drank together and ate sandwiches. When arrested, appellant admitted that he was in Krallman's saloon with John O'Donnell when Krallman was killed, but refused to say who did the killing and futher admitted that he was with McCarthy, Ballman and O'Donnell in the automobile that stopped on the corner of Ashland and Marcus one block north of the place of the tragedy.

Appellant testifying in his own behalf said he met McCarthy, Ballman and O'Donnell a few days prior to the tragedy; that on the fatal night they started out in Ballman's car about 6:30 p. m. to find a bondsman for one of McCarthy's employees, then in jail; that when they got to Ashland one block north of the saloon of the deceased, O'Donnell called to the driver to stop, as he thought he knew a fellow "back here" to sign the bond; that the machine stopped and O'Donnell got out, start-

290 Mo.—15

ed down the street, but when twenty feet away called appellant to go with him. Appellant was intoxicated, but got out and followed O'Donnell, walking a few feet back of him. When they got down to McCaffery Street appellant "stumbled on a rock" and then O'Donnell got further ahead of him. When appellant got to the saloon door and before he could get in, the shots were fired and O'Donnell came toward appellant pointing his gun at him and ordering him to get back to the machine, which he did, pursued by O'Donnell with the gun on him. After the killing, appellant and O'Donnell with Ballman were drinking together in Haberman's saloon, McCarthy remaining in the automobile on the outside. Other facts will be given in the course of the opinion.

I. The first question for determination is the one regarding the sufficiency of the testimony. Appellant demurred at the close of the State's case but, being overruled, he proceeded to introduce testimony

Sufficiency of Evidence. in his own behalf. He cannot now properly challenge the ruling of the court in refusing to sustain his demurrer. [State v. Martin, 230 Mo. 680; State v. Belknap, 221 S. W. 39; State v. Mann, 217 S. W. 67; State v. Lackey, 230 Mo. 707; State v. Fuller, 213 S. W. 98.]

However, as the motion for a new trial challenges the sufficiency of the evidence upon the whole record, that question is presented for our consideration.

That a most atrocious and unprovoked murder was committed stands uncontradicted on this record. On the night of the tragedy appellant, with three companions, namely, Timothy McCarthy, Walter G. Ballman and John O'Donnell, were admittedly together from 6:30 in the evening until one o'clock of the next morning, using Ballman's automobile. During that time their whereabouts was not wholly accounted for, but it did appear that they at one saloon and probably two sought a bond for one of McCarthy's employees, who was confined in jail. About 11:20 p. m. the automobile, containing the

appellant and his companions, without lights, appeared at the corner of Ashland and Marcus streets, one short block north of the place where deceased operated his saloon. The automobile stopped on Ashland near the southeast corner of Ashland and Marcus. The defendant, with one John O'Donnell, got out of the automobile on said southeast corner of Marcus and Ashland, whereupon the driver of the car said he would drive around and meet them there at the same place, to which either appellant or O'Donnell said, "You be sure and be here." Appellant and O'Donnell then walked directly south on Marcus Avenue toward the place of business of deceased. When arrested defendant admitted that he and O'Donnell were together in the saloon of deceased at the time of the killing, but he refused to say who did the shooting. At the trial he admitted all of the above facts except that he was in the saloon. He said that O'Donnell called to him after the automobile had stopped on Ashland and invited him to accompany O'Donnell down to the saloon; that being then intoxicated appellant thought he would go along to get a drink of lemon and selzer; that O'Donnell walked a few feet ahead of the appellant until they reached McCaffery Street, where appellant stumbled over a rock, and then O'Donnell increased his lead; that when appellant got to the open door of the saloon he heard the two shots and was immediately confronted with O'Donnell with drawn revolver, menacing appellant and ordering him back to the machine, and being frightened he ran back to the machine with O'Donnell pursuing him with his gun. Within ten minutes after appellant and O'Donnell left the car on Ashland, they came running back. Immediately after the shot, O'Donnell and appellant were seen running north across McCaffery, up the terrace and across the lawn of a cottage on the north side of McCaffery and east of Marcus. The automobile with Ballman and McCarthy in it was waiting at the agreed place, and as appellant and O'Donnell sprang into the car after the shooting, one of them was heard

to say, "I killed him." The automobile then sped east on Ashland and disappeared. Shortly thereafter appellant, with O'Donnell and Ballman, appeared in a saloon where they ate and drank together. These were the undisputed facts in the case, and the truth thereof was practically admitted by appellant, although he said at the trial that he was not in the saloon and intimated that O'Donnell did the shooting and then compelled him to flee at the point of a pistol. Yet the jury had a right to disregard this part of appellant's testimony and had a right to consider, which it probably did, only the fact of the murder, the circumstances under which appellant and his companions approached the place of the tragedy, the admission as to what occured in the saloon, and the circumstances under which they fled away, and these circumstances were ample from which inference might be drawn that appellant and his companions went there with the common design of taking the life of the deceased.

It was not only proper for the court to submit the case to the jury, but its verdict was not against the weight of the evidence. [State v. De Priest, 290 Mo. 177, 232 S. W. 83.]

Even though O'Donnell, appellant's companion, may have done the actual shooting, yet the jury had the right, upon the testimony, to infer that he acted in pursuance of a common purpose or conspiracy. "The law does not require direct and positive evidence of such conspiracy. It is sufficient if it may be inferred from the facts and circumstances in evidence." [State v. Fields, 234 Mo. 615, l. c. 623; State v. Roberts, 201 Mo. 702; State v. Darling, 199 Mo. 168; State v. Sykes, 191 Mo. 62.]

II. Appellant's assignment that the verdict is the result of passion and prejudice of the jury is not supported by any reason for the allegation, and a careful reading of the entire transcript of the record fails to

**Passion and Prejudice.** disclose any misconduct on the part of the jury or any act from which an inference might be drawn that the jury was moved by passion and prejudice, and such an allegation in the moton for a new trial presents nothing for review. [State v. McBrien, 265 Mo. 594; Sec. 4079, R. S. 1919.]

III.  There was no error prejudicial to appellant in instructing the jury on murder in the first and second degree and on circumstantial evidence, as claimed by him in his motion for a new trial. As was well said in **Instructions.** the case of State v. Fields, 234 Mo. 615:

'There was clearly evidence tending to prove murder in the first degree, and we need not stop to inquire whether it also tended to prove murder in the second degree, for it is provided by Section 4903, Revised Statutes 1909, now Section 3692, Revised Statutes 1919, that 'any person found guilty of murder in the second degree, . . . shall be punished according to the verdict of the jury; although the evidence in the case shows him to be guilty of a higher degree of homicide.' "

Appellant therefore was the beneficiary of this instruction, and if error, it was in his behalf and he cannot complain of such instruction here, as the testimony tends to show murder in the first degree.  Again Section 3908, Revised Statutes 1919, specifically provides that a judgment of conviction shall not be affected "because the evidence shows or tends to show him to be guilty of a higher degree of the offense than that of which he is convicted."

It was the statutory duty of the court to instruct on circumstantial evidence, as that became a question of law arising in the case and was necessary for the information of the jury in giving their verdict. [Sec. 4025, R. S. 1919.]

IV.  Although appellant did not specify in his motion for a new trial, as he should have done, the testi-

mony admitted over his objections, we have carefully searched the record and we find no testimony produced to the jury over his objections that should have been excluded. In view of the fact that appellant did not except to the court's adverse ruling, save in a few instances, the greater part of such matter is not before this court for review. [State v. Snyder, 173 S. W. 1078, 263 Mo. 664; State v. Fields, 170 S. W. 1132, 262 Mo. 158.]

*Objections.*

Again where appellant saved his exceptions to the adverse rulings of the court on the admission of testimony, he should have pointed out in his motion for a new trial the particular testimony about which he complained, as otherwise the motion is entirely too indefinite. [State v. Holden, 203 Mo. 581.]

V. Much of the motion for a new trial consists of complaint against the conduct of the Assistant Circuit Attorney in the manner of his cross-examination of appellant and his witness. Appellant has specified more definitely in these assignments the nature and character of such cross-examination, but by reference to the objectionable matter in the record we find the Assistant Circuit Attorney only went into questions covered by the direct examination. This he had a right to do, and the assignment is without merit. [State v. Miller, 156 Mo. 76, 56 S. W. 907.]

*Cross-Examination.*

VI. Appellant attached to his motion for a new trial excerpts from an alleged argument made by the Assistant Circuit Attorney to the jury at the close of the case, which argument he complains against as misconduct. We have examined the bill of exceptions and we find no part of such argument. The only record of such argument is contained in the statement attached to the motion for a new trial. It is presumed, therefore, that there was no misconduct. [State v. Lloyd, 217 S. W. 26, l. c. 27; State v. Schrum,

*Argument to Jury.*

State v. Ellis.

164 S. W. 202, 255 Mo. 273; Miller v. Engle, 185 Mo. App. 558, 1. c. 579 and 580; Dougherty v. Whitehead, 31 Mo. 255.]

Again, even if prejudicial and improper argument had been made to the jury, the excerpt from such argument as attached to the motion for a new trial did not show that a single exception was saved to. the ruling of the court. It appears that the court sustained the objections made by appellant's counsel and rebuked the Assistant Circuit Attorney, except in one case where the court merely said that it was a matter of argument and directed the Assistant Circuit Attorney to proceed. No exceptions were saved and no requests were made to reprimand counsel and discharge the jury, and in consequence there is no basis for complaint here.

VII. Complaint is made against the action of the court in refusing to withdraw the jury pending decision by the trial court as to the competency of certain testimony. The record shows that such request Withdrawal was made of the court during the examina-of Jury. tion of Detective Sergeant John P. Roach. No ruling was made by the court and no exceptions saved by appellant, so this question is not before us for review. [State v. Snyder, 173 S. W. 1078, 263 Mo. 664.]

VIII. Appellant further complains that the court erred in refusing to give his Instruction Number Two. This requested instruction was but a repeti-Refused tion of Instruction Number Six and other Instruction. instructions given by the court, and as the same matter was fully covered by other instructions, it was not error for the court to refuse to give this one.

We have carefully examined the entire record in this case touching all questions raised by appellant's motion for a new trial and it is our judgment that appellant was fairly tried upon questions correctly submitted to the jury. No reason appears to disturb the judgment of the lower court, and it is accordingly affirmed. *Railey* and *White, CC.,* concur.

PER CURIAM:—The foregoing opinion by REEVES, C., is adopted as the opinion of the court. All of the judges concur; *D. E. Blair, J.*, in separate opinion, in which *Higbee, P. J.*, concurs.

DAVID E. BLAIR, J. (concurring).—I concur in the result reached in this case by the learned Commissioner and in everything said in the opinion, except what is therein said in reference to the insufficiency of the general assignments of error in the motion for new trial attacking the verdict as the result of passion and prejudice, and attacking the rulings of the trial court on the admission and exclusion of testimony. · ·

I am not satisfied with the rulings heretofore made by this Division distinguishing between such assignments in civil and criminal cases and believe that in a proper case a final decision on the question by Court in Banc is desirable. But since the Commissioner has examined the transcript and found that no error was actually committed by the trial court in regard to the matters attacked in such general assignments, with which ruling I am in agreement, I concur in the result reached by him. *Higbee, P. J.*, concurs in these views.