## STATE OF MISSOURI

AT THE

### APRIL TERM, 1922.

*(Continued from Volume 294.)*

THE STATE v. GLENN HEMBREE and STOKLEY JACOBS, Appellant.

Division Two, June 19, 1922.

1. **DEMURRER:** Waiver. Defendants by offering evidence in their own behalf after their demurrer interposed at the close of the State's evidence was overruled, waived their contention that the State's evidence was insufficient to sustain a conviction.

2. ————: Murder in Second Degree: Sufficient Evidence. The entire evidence in this case, in which defendants admit the killing of deceased and claim self-defense, was sufficient to sustain a conviction of murder in the second degree.

3. **INSTRUCTION:** Only for Murder in First Degree: Verdict for Second Degree. Where the court instructed only for murder in the first degree a defendant cannot complain of a verdict finding him guilty of murder in the second degree. A verdict more favorable to him than the instructions would warrant is a matter of which he cannot complain. And on motion for rehearing, *Held*

(1)

that, where it is admitted that one of the defendants did not fire the gun that killed deceased, and the court specifically instructed the jury either to convict him of murder in the first degree or to acquit him, he cannot complain of a verdict convicting him of murder in the second degree, first, because the test of error is the presence of prejudice and said defendant was not prejudiced by the verdict, and, second, because the statute (Sec. 3908, R. S. 1919) specifically forbids the reversal of a judgment for any "defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits," and it is the law that where a defendant is convicted of a lesser crime than the one charged in the indictment he cannot complain that the court erred in refusing to instruct on such lesser crime.

4. ———: **Conspiracy: Formal Understanding: Sufficient Evidence.** A conspiracy may be proven by circumstantial evidence and its existence deduced from attending circumstances, without the showing of a formal understanding. And the testimony in this case was sufficient to support an instruction on the question of a conspiracy between the two defendants to murder deceased.

5. ———: **Omission of Reasonable Doubt.** Instructions must be read together, and an instruction telling the jury that if one of the defendants "wilfully, deliberately, premeditatedly and of his malice aforethought, shot with a shotgun and by such shooting killed deceased, you will find him guilty of murder in the first degree," is not erroneous on the theory that it omits the question of reasonable doubt, where that question is fully covered by others given.

6. ———: **Motive: Referring Jury to Information.** An instruction telling the jury that if "you further find and believe beyond a reasonable doubt that the defendant shot and killed deceased as charged, then you will find the defendant guilty, regardless of any proof of motive," does not by the use of the words "as charged" erroneously refer the jury to the information to ascertain the elements of the crime. The other instructions given having fully and fairly covered every element of the crime, the jury were not by said instruction relegated to the information alone for the facts of the charge.

7. ———: **Credibility of Witnesses: Character: No Request.** If defendant is of the opinion that a given instruction, in the usual form, on the subject of the credibility of the witnesses, is defective in that it does not require the jury to take into consideration their "character," it is his duty to request an instruction more direct upon that point, and if he fails to make such request he cannot be heard on appeal to complain that the instruction should have required the jury to consider the character of the witnesses.

8. ———: Two Defendants: Reasonable Doubt: Reference to Both.
An instruction on the subject of reasonable doubt and referring
to both of two defendants jointly indicted and tried, is not ob-
jectionable, where the other instructions given authorize the jury
to find both guilty, or both not guilty, or one guilty and the other
not guilty, as the facts may warrant.          ,

Appeal from Butler Circuit Court.—*Hon. Almon Ing,*
*Judge.*

Affirmed.

*Henson & Woody* for appellant.

(1) There is no evidence in this record upon which
to base the verdict of the jury, and defendants' motion
for a new trial should have been sustained. State v.
Hopkins, 278 Mo. 388; State v. Larkin, 250 Mo. 218;
State v. Lentz, 184 Mo. 223, 243; State v. Scott, 177 Mo.
665; State v. Mahan, 138 Mo. 112; State v. Marshall,
47 Mo. 378; State v. Williams, 186 Mo. 128.   (2) The
verdict of the jury finding defendant Jacobs guilty of
murder in the second degree has no evidence whatever
to sustain it.   State v. Dipley, 242 Mo. 461; State v.
Ilgenfritz, 263 Mo. 613; State v. Ruckman, 253 Mo. 487;
State v. Prendible, 165 Mo. 329; State v. Bass, 251 Mo.
107; State v. Rector, 126 Mo. 328; State v. Cox, 65 Mo.
29; People v. Farmer, 196 N. Y. 65.   (3) The verdict
of the jury as to Jacobs is in direct conflict with and
contrary to the law as declared by the court, and should
be set aside.   R. S. 1919, secs. 4023, 4025, 4078, 1417,
1453; 27 R. C. L. 858; Payne v. Railroad, 129 Mo. 405,
421; 29 Cyc. 820 (G); Britt v. Aylett, 11 Ark. 475;
Limburg v. Ins. Co., 57 N. W. (Iowa), 626, 630; Fleming
v. Railroad, 148 Ala. 527; Stanfield v. Green, 54 Neb.
10; Refining Co. v. Instrument Co., 178 Pac. (Okla.)
111; Galbreath v. Mayo, 174 Pac. (Okla.) 517; Hauser
v. Davis, 197 S. W. (Ark.) 693; Gartner v. Mohan, 163
N. W. (S. Dak.) 674.   (4) It was error for the court
to instruct the jury on the law of conspiracy, since there

was no evidence in the record proving or tending to prove a conspiracy between defendants to kill deceased. State v. Porter, 199 S. W. 158; State v. Daubert, 42 Mo. 238; State v. May, 152 Mo. 135, 151. (5) Instruction number two is prejudicially erroneous because it permits the jury to return a verdict of guilty if they could reasonably and satisfactorily infer the existence of the elements which go to make up the crime. Guilt must be established beyond a reasonable doubt. Nothing else will suffice. State v. Wheaton, 221 S. W. 26; State v. Goldstein, 225 S. W. 911; State v. Bass, 251 Mo. 107. (6) Instruction number 11 refers the jury to the information to ascertain the elements of the crime, and not to the instructions, and is, therefore, erroneous. State v. Constitino, 181 S. W. 1155; State v. McCaskey, 104 Mo. 644; State v. Brown, 104 Mo. 365. (7) Instruction number 8, should have told the jury that, in weighing the testimony of the witness, they should take into consideration the character of the witness. It was especially necessary that they should do that in this case. State v. Shelton, 223 Mo. 118; State v. Martin, 230 Mo. 680. (8) Instruction number 12 should have permitted the jury to acquit either of the defendants if they entertained a reasonable doubt of guilt, and should not have required them to have a reasonable doubt of the guilt of both before they could acquit either.

*Jesse W. Barrett,* Attorney-General, and *J. Henry Caruthers,* Special Assistant Attorney-General, for respondent.

(1) Where the evidence is conflicting, it is for the jury to weigh and give credit to or reject the testimony as they see fit. If the appellants' account of the tragedy should be given full credit, then the killing was justifiable, but the jury were the judges of the credibility of the witnesses and the weight to be attached to their testimony. There was substantial evidence tending to show the defendants guilty of the crime for which they

were convicted, and this court will not interfere. State
v. McKenzie, 177 Mo. 717; State v. Williams, 186 Mo.
135.   (2)  It is not necessary to prove a conspiracy by
direct evidence; it may be shown by facts and cir-
cumstances in the case.  Appellants were close and con-
stant companions. Hembree admitted he did the shooting.
Jacobs had made threats toward deceased; had been
intimate sexually with the wife of deceased; when
leaving the scene of the killing turned and went back
for a few minutes; when leaving a second time, declared,
upon inquiry of Mrs. Roark of what was the matter,
"Oh, nothing.   Just been over to Board's;" offered
deceased $20 to leave the country.  All these facts and
others pointed to Jacobs' guilt.   State v. Walker, 98
Mo. 104; State v. Flanders, 118 Mo. 234; State v. Dar-
ling, 199 Mo. 199.; State v. Fields, 234 Mo. 623; State v.
Roberts, 201 Mo. 728; State v. Sykes, 191 Mo. 78.   (3)
The court is not limited to the testimony of the adverse
party, but considers all evidence in the case in passing
upon its sufficiency to sustain the verdict.   State v.
Meagher, 49 Mo. App. 576; State v. Martin, 230 Mo.
700; State v. Lackey, 230 Mo. 720.   (4)  This case was
submitted to the jury on the theory that Hembree was the
principal and that Jacobs was an aider and abettor.
Under the instructions, taken as a whole, the jury was
authorized to find Jacobs and Hembree guilty in the
same degree.  State v. Dalton, 27 Mo. 13; State v. Nel-
son, 98 Mo. 414; State v. Walker, 98 Mo. 95; State v.
Ostrander, 30 Mo. 13.   (5)   Instruction 2, which ap-
pellants criticize as being insufficient, in that it does
not inform the jury that defendant must be found guilty
beyond a reasonable doubt, when taken with Instruction
12, which must be done, fully and correctly states the
law, and is not erroneous.   (6)  Instruction 11 is on
motive alone and is correct.  The court defined the
offense accurately and correctly, and told the jury that
defendants   were   charged   therewith   in   instruction
number 1.  This court did not decide that a similar in-

struction on motive in the Constitino Case, 181 S. W. l. c. 1157, cited by appellants, constituted reversible error. Therefore this case does not sustain their point. State v. McClaskey, 104 Mo. 648; State v. Constitino, 181 S. W. 1157. A similar instruction has been approved. State v. Bond, 191 Mo. 562. (7) Instruction 8 on credibility contains all the essential elements, and has been approved. State v. Bond, 191 Mo. 561. (8) The instructions cover all the law applicable to the facts. If appellants desired additional instructions they should have requested them. Having failed to do so, they cannot now complain. State v. Barnett, 203 Mo. 658. (9) Instruction 12 applies alike to each appellant, and the jury could not have been misled by its terms when it is taken with Instruction 7, as it must be.

REEVES, C.—Defendants were charged by information with murder in the first degree and convicted of murder in the second degree. After unsuccessful motions for a new trial and in arrest of judgment, they appeal. Their plea was self-defense.

It was charged that on the 26th day of February, 1921, in the County of Butler, they shot and killed one Charlie Board with a shot gun.

For the State, the testimony showed that both of the defendants resided at the village or town of Qulin in said county and that the deceased lived a few miles from there, on a slough or body of water, where he had a contract to clear a right-of-way for a drainage district; that a brother of the deceased and another were working for deceased on said right-of-way not far from the house where deceased lived; that the appellants appeared about ten o'clock in the morning and inquired of said parties if deceased were at home and being answered in the affirmative asked if they were sure of that fact. They proceeded to the home of the deceased, where they found him engaged in the performance of some chores about the house. Appellants

remained at the home of the deceased until some time toward the middle of the afternoon. They ate their dinners with him. During their visit, various conversations were had as overheard by several witnesses. At one time the appellants and the deceased were negotiating with respect to a trade for one of two revolvers owned by the deceased and exhibited at the time. One was a large revolver without loads, a fact that was discussed, and particularly as it was of such a size that cartridges could not be conveniently obtained for it. This revolver was the subject of the negotiations. The smaller revolver was loaded.

Defendant Hembree carried a single-barreled shotgun and, during the visit, deceased used said gun in shooting at a can or some object, which one of the appellants had thrown in the air. The general attitude of the parties on the surface seemed to be one of friendliness.

In the course of the day, appellant Jacobs told deceased that there was a warrant out for him and, upon inquiry by deceased as to who held the warrant, said that one Owen Temples was responsible for it. At the same time he indicated to deceased that he should leave the community, and that he, Jacobs, would give him $20 to aid him in his flight. Here it may be noted that Owen Temples was the former husband of the wife of the deceased; that deceased and his wife had been married less than two months, and that appellant Jacobs was an uncle of deceased's wife, and there was testimony indicating that the relations between Jacobs and the wife of the deceased had been intimate. Apparently no trade or exchange of property was effected between the parties, and the three left the house together, the deceased carrying his smaller pistol loaded and his larger pistol unloaded. The three came to the place where the deceased's brother, Elmer Board, and Jesse Roark were working on the right-of-way, as above stated, and after some conversation the appellants in-

dicated a purpose to return to their home at Qulin and the deceased said that he must return to his own house, whereupon it was suggested that the three could go a portion of their respective ways together. They crossed the aforesaid slough by a foot log, a short distance from where Elmer Board and Roark were working, and had gone a short distance along the road when the muffled report of a gun was heard and shortly thereafter appellant Hembree, carrying the shot gun, came running back toward the slough. A considerable distance behind him appellant Jacobs was observed running from the place where the report of the gun was heard. Jacobs then faced about and returned to the place from which the sound of the gun had come. When he came away again, witnesses, who resided in the vicinity, inquired of him whether there was any trouble and received an evasive reply. Attention had been attracted by these rather suspicious circumstances, and upon investigation, the body of the deceased was found in the road with a gun shot wound in the breast. This had been instantly fatal. The larger revolver was in one of the pockets of a jacket worn by the deceased, and the smaller revolver was in his right hand.

Appellants admit that appellant Hembree shot and killed the deceased, but say that the shot was fired in self-defense. According to their testimony there had been no ill feeling during the day of the tragedy, and the three were proceeding amicably along the road when suddenly the deceased made a statement regarding his father-in-law, who he said had been coming to his house with his hands in his pockets, and that he proposed to take some measures against him if that were repeated, and then accused appellant Hembree with having had trouble with Elmer Board, a brother of the deceased.

Appellants testified that the deceased was assured that such trouble had been adjusted and forgotten, and that without more ado the deceased became contentious in his own behalf and informed both of the appellants

that he intended to kill, or had bullets for each of them, and proceeded to draw both of his revolvers; that Hembree then shot deceased with his shot gun, inflicting a wound from which, after the deceased had walked some ten or twelve steps, he fell and expired, and that both of the appellants ran away from the scene of the trouble.

There was testimony that previously appellant Jacobs had made threats against the life of the deceased. Other pertinent facts will be discussed in the course of the opinion.

I. At the conclusion of the State's evidence each of the defendants interposed a demurrer and they complain here that the court erred in failing to grant such **Demurrer.** requests. When their respective demurrers were overruled appellants proceeded to offer testimony in their defense and in so doing they waived their right to be heard on their demurrers at the close of the State's evidence. [State v. Ellis, 290 Mo. 219, 234 S. W. 845; State v. Jackson, 283 Mo. 18, 222 S. W. 746; State v. Belknap, 221 S. W. 39, l. c. 45; State v. Mann, 217 S. W. 67, l. c. 69; State v. Martin, 230 Mo. 680, l. c. 700, 132 S. W. 595; State v. Lackey, 230 Mo. 707, l. c. 713, 132 S. W. 602; State v. Starling, 207 S. W. 767.]

II. At the close of all of the testimony the appellants renewed their requests for peremptory instructions in the nature of demurrers and were overruled. They **Sufficient Evidence.** complain that this was error. The statement of a few facts will be sufficient to show that a case was made for the jury. The testimony showed that Jacobs had made threats against the life of the deceased; that he had been intimate with the wife of the deceased while she was the wife of Owen Temples; that on the day of the tragedy appellants were particular in their inquiry as to whether the deceased was at his home; that they spent several hours with the deceased without evincing any business reasons

therefor (there were no intimate social relations existing between them); that appellant Jacobs told the deceased that there was a warrant out for him and proposed to give him $20 to aid in his flight; that after the shooting of the deceased both the appellants fled away from the scene of the tragedy, and appellant Jacobs returned to the scene immediately thereafter, and then upon inquiry, as to whether there was any trouble, made an evasive answer which was tantamount to a denial. Moreover, it was admitted by them that Hembree had shot and killed the deceased and the story detailed by each of them was of such nature as to warrant the jury in drawing adverse inferences therefrom. The muffled report of the gun, indicating that the gun was pressed against the body of the deceased, became a matter of serious consideration and the position of the body of the deceased rather tended to contradict the theory of self-defense advanced by appellants. One of the revolvers was in his pocket, and the other, while in his hand, was in such position as to raise a serious question for the jury, in view of the attendant circumstances, as to how it got there. The testimony was sufficient to raise an issue for the jury. [State v. McKenzie, 177 Mo. 699, l. c. 717; State v. Williams, 186 Mo. 128, l. c. 135 et seq.]

III. As to appellant Jacobs, the court instructed only on murder in the first degree, whereas the verdict was for murder in the second degree. The fact that the jury returned a verdict more favorable to ap-

**Instruction Only for Murder.** pellant Jacobs than the instructions would warrant is not a matter about which he may justly complain. This court has repeatedly held that if a jury returned a verdict finding the defendant guilty of an offense below that charged in the indictment or information and authorized by the instructions it is not a basis of a complaint. [State v. Hutchison, 186 S. W. 1000; Sec. 3692, R. S. 1919.]

IV. The trial court did not err in giving an instruction to the jury on the question of a conspiracy. The testimony was sufficient to support the instruction.

Conspiracy. A conspiracy may be proven by circumstantial evidence and its existence may be deduced from attending circumstances, without showing a formal understanding. [State v. Kolafa, 236 S. W. 302; State v. Bersch, 276 Mo. 397, l. c. 414; State v. Walker, 98 Mo. 95, l. c. 104; State v. Porter, 199 S. W. 158.]

V. The court of its own motion gave the jury seventeen separate instructions. The second instruction followed the language of the information and told the jury that if the defendant Glenn Hembree "wilfully, deliberately, premeditatedly and of his malice aforethought, shot with a shotgun, and by such shooting killed Charlie Board, you will find him guilty of murder in the first degree."

Reasonable Doubt.

Appellants complain that the question of reasonable doubt should have been put in this instruction. That question was fully covered by other instructions, and it is the law that instructions are to be read and considered as a whole. [State v. Burgess, 193 S. W. 821; State v. Murray, 193 S. W. 830; State v. Arnett, 210 S. W. 82; State v. Reppley, 278 Mo. 333, 213 S. W. 477; State v. Jones, 225 S. W. 898.]

VI. Complaint is made against instruction numbered 11 on the subject of motive, on the grounds that it refers the jury to the information to ascertain the elements of the crime. We do not thus read the instruction. It told the jury that if "you further find and believe beyond a reasonable doubt that the defendant, Glenn Hembree, shot and killed Charlie Board *as charged,* then you will find the defendant guilty, regardless of any proof of motive." It would be as reasonable to say that this reference "as charged" was to the charge contained in other instructions and not a reference to the information.

Referring Jury to Information.

Our attention is called to the case of State v. Constitino, 181 S. W. 1155; l. c. 1157, where, in an *obiter,* it was suggested that an instruction thus prepared might be error. In the case of State v. Burgess, 193 S. W. 821, l. c. 826, the same question was squarely before the court and WALKER, J., used the following language in reference thereto:

"We have found no authorities here or elsewhere in which a reference to the information or indictment rendered an instruction invalid, unless it left the jury no other alternative than such reference to determine their duty."

The learned author then said that no such state of facts existed in that case, and so say we here, as the other instructions had fully and fairly covered every element of the crime and the jury were not relegated alone to the information for the facts as to the charge. [State v. Herring, 268 Mo. 514, 188 S. W. 169.]

VII. Instruction numbered 8 given by the court was on the subject of the credibility of the witnesses and was in the usual form. Appellants complain that said instruction was defective because it **Character of Witnesses.** did not tell the jury that they should take into consideration the *character* of the witnesses. They say that that question was specially significant in this case. If appellants desired an instruction more direct as to that point, they should have requested such an instruction, and failing to do so they have no basis for complaint. [State v. Herring, supra.]

VIII. Instruction numbered 12 covered the subject of reasonable doubt and referred to both of the defendants. Appellants complain that the instructions should have been drawn so that the jury **Reference to Both Defendants.** may have acquitted either one of the defendants, if a reasonable doubt arose in their minds as to his guilt. As above stated, all the instructions must be considered together, and instruction

numbered 7 told the jury that they might find both the defendants guilty, or both not guilty, or that they might find one guilty and one not guilty, as the facts would warrant. The jury was not misled by this instruction, and we rule the point against the appellants.

A careful examination of all the assignments of error made by the appellants fails to reveal any errors of which the appellants or either of them may justly complain and we accordingly affirm the judgment of the trial court. It is so ordered. *Railey, C.,* concurs; *White, C.,* not sitting.

PER CURIAM:—The foregoing opinion by REEVES, C., is adopted as the opinion of the court. All of the judges concur; *David E. Blair, J.,* in result.


## ON MOTION FOR REHEARING.

PER CURIAM:—Appellants in their motion for a rehearing again directed our attention to the fact that the court instructed the jury as to appellant Jacobs only on murder in the first degree, and that the court specifically told the jury either to convict him of murder in the first degree or acquit him. As stated, the jury returned a verdict for murder in the second degree as to both appellants, and this disobedience to the court's instruction is assigned as error. .

As said by this court: "The test of error is the presence of prejudice" (State v. Hill, 273 Mo. 329), and if appellant Jacobs was entitled to an instruction on murder in the second degree, he could not have been prejudiced because the jury did that which the court failed to say it might do.

Assuming that appellant Jacobs was entitled to an instruction on murder in the second degree, if convicted of murder in the first degree, the court's failure to instruct on murder in the second degree would have constituted error, appellant Jacobs was not prejudiced by

the verdict of the jury and, as said in the opinion, has no basis for complaint.

Section 3908, Revised Statutes 1919, our general statutes of jeofails, expressly forbids that a proceeding be declared invalid "for any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits." This statute is susceptible of easy construction, and concerning a similar statute in civil cases, this court has said: "Where a jury arrive at a just verdict, though the court held out a false light to them or threw dust in their eyes by bad instructions, yet it may not be disturbed." [Brook v. Barker, 228 S. W. 1. c. 806; Mockowik v. Railroad, 196 Mo. 550, 1. c. 568.] Moreover, it is the law that where an appellant is "convicted of a lesser crime than charged in the indictment, he cannot complain of error in refusing to charge on such lesser crime." [17 C. J. 352; United States v. Perkins, 221 Fed. 109; People v. Munroe, 119 App. Div. 704, 190 N. Y. 435, 83 N. E. 476; Sec. 3692, R. S. 1919; State v. Morrow, 188 S. W. 75; State v. Todd, 194 Mo. 377, 92 S. W. 674; State v. Whitsett, 232 Mo. 511, 134 S. W. 555.]

The motion is overruled. All concur.